STATE of Wisconsin, Plaintiff-Respondent,

v.

Kelly COOPER, Defendant-Appellant.†

Court of Appeals

*No. 82–1117–CR. Submitted on briefs September 30, 1983.—
Decided December 16, 1983.*
(Also reported in 344 N.W.2d 194.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Donald S. Eisenberg* and *Eisenberg, Giesen, Ewers & Hayes, S.C.* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

Before Gartzke, P.J., Dykman, J. and Gordon Myse, Reserve Judge.

GARTZKE, P.J.   Kelly Cooper drove through a red light and struck an automobile, killing both occupants. She appeals from a judgment convicting her on two counts of homicide by negligent use of a vehicle, contrary to sec. 940.08, Stats. She contends that the trial court erroneously instructed the jury on the burden of proof and reasonable doubt, that the evidence was insufficient to convict her, and that the court took into account improper factors when imposing sentence. We find no error and affirm.[1]

Defendant testified that January 3, 1981 she worked at the pizza store she managed from about 8:00 A.M. until

---

[1] The court of appeals certified this appeal to the supreme court August 24, 1983. Certification was denied August 30, 1983.

5:30 P.M. and went home. She and a friend later drove to the home of a co-worker where they had dinner. During the evening defendant had three or four mixed drinks, her first for the day. They left at 11:00 P.M. She and the other guest drove to the latter's home. Defendant left about 12:30 A.M., having had nothing more to drink, and drove south on Stoughton Road. She remembers seeing a green traffic light at the intersection of Stoughton Road and Buckeye Road when her speed was 50 miles per hour. She remembers nothing after that.

A witness testified that his westbound car was stopped on Buckeye at the intersection. When the light changed to green for him and red for traffic on Stoughton Road, he saw defendant's southbound car. He estimated its speed at about 50 miles per hour. An eastbound car on Buckeye was driving slowly into the intersection. Defendant's car entered the intersection against the light, attempted to swerve left and hit the eastbound car.

A police officer arrived at the intersection before 1:00 A.M. He testified that the speed limit was 55 m.p.h. for drivers on Stoughton Road. About three-tenths of a mile north of the intersection, two signs warned drivers of signals ahead. A night-time driver could see the signs about half a mile away. The weather was clear and the highway was dry, ice-free and in good driving condition. Defendant's car left skid marks 53'6" long to the point of impact.

Defendant was charged with two counts of homicide by intoxicated use of a motor vehicle, sec. 940.09, Stats. The jury found her guilty on two counts of the lesser-included offense of homicide by the negligent use of a motion vehicle, sec. 940.08(1). The trial court sentenced her to two concurrent fourteen-month prison terms.

## I. *Instructions*

Defendant attacks three parts of the jury instruction on reasonable doubt.[2]

### A. *Reason for Doubt*

The court instructed the jury, "The term 'reasonable doubt' means a doubt based on reason and common sense.

---

[2] The trial court's instruction on reasonable doubt substantially followed Wis J I—Criminal 140 (1962). That instruction was subsequently revised. The court instructed the jury:

In determining the guilt or innocence of the defendant you should scrutinize the evidence with the utmost care and caution. You should act with all the judgment, reason, prudence and discrimination you possess. If, after this scrutiny of all the evidence, you have a reasonable doubt of the defendant's guilt, you must find her not guilty.

The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of her guilt beyond a reasonable doubt. The defendant is not required to prove her innocence.

The burden of proving the defendant guilty of every element of the crime charged is upon the State. Before you can return a verdict of guilty, you must be satisfied beyond a reasonable doubt that the defendant is guilty.

If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find her not guilty.

The term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which a reason can be given arising from a fair and rational consideration of the evidence or want of evidence. It means such a doubt as would cause a man of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.

A reasonable doubt is not a doubt which is merely fanciful or speculative such as a skeptical mind might suggest. A doubt which ignores a reasonable interpretation of the evidence, or which arises merely from sympathy or from fear to return a verdict of guilty is not a reasonable doubt. A reasonable doubt is not

It is a doubt for which a reason can be given . . . ." Defendant asserts the definition improperly compels jurors to find a reason for their doubts. She cites *Dunn v. Perrin,* 570 F.2d 21 (1st Cir. 1978), *cert. denied,* 437 U.S. 910 (1978) and *United States v. Crouch,* 528 F2d 625 (7th Cir 1976), *cert. denied,* 429 U.S. 900 (1976), for the proposition that the jury need not have a reason for an acquittal. Neither case supports that proposition.

The instruction in *Dunn* explained reasonable doubt as "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason." The *Dunn* court criticized the definition, not on defendant's theory, but for having "suggested that a doubt based on reason was not enough to acquit . . . ." *Id.* at 23 (footnote omitted). The *Crouch* court held it was error to define reasonable doubt as "a doubt that is based on reason and must be substantial rather than speculative." The *Crouch* court said, as it had in *United States v. Bridges,* 499 F2d 179, 186 (7th Cir. 1974), *cert. denied,* 419 U.S. 1010 (1974), that equating reasonable doubt with substantial doubt is objectionable. It did not comment on the first part of the definition. *Crouch* at 630–31.

---

merely a doubt such as may be conjured up in the mind of one desiring to escape the responsibility of a decision.

The burden of proving a defendant guilty beyond a reasonable doubt rests upon the State. This burden never shifts throughout the trial. The law does not require a defendant to prove her innocence or to produce any evidence. She may rely upon evidence brought out on cross-examination of witnesses for the State. If the State fails to prove the defendant guilty beyond a reasonable doubt, the jury must find her not guilty.

While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth and give the defendant the benefit of a reasonable doubt if it arises in your minds after you have carefully considered all the evidence in this case.

Defining reasonable doubt as one for which a reason can be given was approved in *Butler v. The State,* 102 Wis. 364, 368–69, 78 N.W. 590, 591–92 (1899). In the absence of persuasive authority impeaching that definition, we follow *Butler.* Precedents established by the Wisconsin Supreme Court bind the court of appeals. *Livesey v. Copps Corp.,* 90 Wis. 2d 577, 581, 280 N.W.2d 339, 341 (Ct. App. 1979).

### B.  *Reasonable Interpretation of Evidence*

Defendant urges that the trial court erred in the instruction that "doubt which ignores a reasonable interpretation of the evidence . . . is not a reasonable doubt." In her view, the instruction fails to remind the jurors that they must acquit if a competing interpretation of the evidence exists which is inconsistent with guilt. We disagree.

The paragraph containing the challenged language advises the jurors not to ignore a reasonable interpretation of the evidence in favor of fanciful or speculative doubts, doubts arising merely from sympathy or fear, or doubts conjured up in the mind of one desiring to escape the responsibility of decision. Given the entire paragraph in which the challenged language is contained, no jury could conclude that it should find guilt merely upon one interpretation in the face of a contrary competing interpretation. Indeed, in a prior paragraph the court told the jury, "If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find her not guilty."

### C.  *Presumption of Truth*

Defendant asserts that the trial court created a presumption of truth as to the evidence presented at the

trial. She finds that presumption in the instruction: "[Y]ou are not to search for doubt. You are to search for the truth and give the defendant the benefit of a reasonable doubt if it arises in your minds after you have carefully considered all the evidence in this case." But the court repeatedly instructed the jury that the burden rests on the state. The challenged instruction does not create or suggest the claimed presumption.

## II. *Sufficiency of Evidence*

Defendant contends that the jurors had insufficient evidence to find that the manner in which she operated her motor vehicle constituted a "high degree of negligence." She contends that the sole evidence supporting the verdict is that she ran a red traffic light, and that while this is negligent behavior, it is ordinary negligence.

We do not sit as trial judges or jurors, making findings of fact. We decide only "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt." *State v. Ehlenfeldt*, 94 Wis. 2d 347, 360, 288 N.W.2d 786, 792 (1980) (quoting *Lock v. State*, 31 Wis. 2d 110, 114, 142 N.W.2d 183, 185 [1966]). Whether we are convinced of the defendant's guilt beyond a reasonable doubt is immaterial. We review the record only to determine if we can conclude the jury could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. *Id.* We reach that conclusion.

Section 940.08, Stats., provides:

(1) Whoever causes the death of another human being by a high degree of negligence in the operation or handling of a vehicle, firearm, airgun, knife or bow and arrow is guilty of a class E felony.

(2) A high degree of negligence is conduct which demonstrates ordinary negligence to a high degree, consisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another.

This definition of a high degree of negligence has two elements: the standard definition of ordinary negligence, and the additional element of a high probability of death or great bodily harm. *Hart v. State,* 75 Wis. 2d 371, 383, 249 N.W.2d 810, 814–15 (1977). Defendant concedes, as she must, and in fact insists, that going through an intersection on a red light constitutes ordinary negligence. That does not protect her from criminal liability.

Ordinary negligence requires the actor reasonably to foresee only an unreasonable risk of harm to others. *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 182, 77 N.W.2d 397, 401 (1956), *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 235–40, 55 N.W.2d 29, 32–35 (1952). A high degree of negligence, as defined by sec. 940.08(2), Stats., requires not only an unreasonable risk of harm, as in ordinary negligence, but a high probability of death or great bodily harm to another. Consequently, if an actor is ordinarily negligent, and should reasonably foresee that his or her negligence creates a high probability of death or great bodily harm to another, then the second element of the definition is met. *Hart* at 383, 249 N.W.2d at 814–15.

The jury could find that going through a red light at 50 m.p.h. creates a high probability of death or great bodily harm. The legality of the 50 m.p.h. speed has nothing to do with it. Every driver knows or should know that the greater the speed, the greater the impact, and the greater the probability of death or great bodily injury. *Compare Hart* at 397, 249 N.W.2d at 822 (risk of hitting bicyclist at 60 m.p.h. carries with it a high probability of

death). Accordingly, because the evidence accepted by the jury is sufficient to prove defendant's guilt beyond a reasonable doubt, we must sustain it. *State v. Ehlenfeldt, supra.*

We express our concern with a crime which too easily attends automobile accidents in areas where high speeds are lawful. The speed limit is 55 m.p.h. in most rural and many semi-rural areas. Because a lawful but high speed, in and of itself, will frequently entitle a court or jury to find a high probability of death or great bodily harm, sec. 940.08, Stats., subjects an ordinarily negligent motorist who lawfully drives at the maximum speed limit to possible prosecution for a felony. The test is purely objective. The crime is complete without criminal intent. *Hart* at 383, 249 N.W.2d at 814–15. This comes close to converting ordinary negligence into a felony solely because death or great bodily harm has resulted. *Compare Clemens v. State,* 176 Wis. 289, 309–313, 185 N.W. 209, 216–17 (1922) (legislature urged to change manslaughter statute from requiring only ordinary negligence when speeding to requiring gross negligence or violation of a penal law).

### III. *Sentence*

Defendant contends that incarceration is inappropriate, that the sentence is excessive and that the trial court improperly took into account the charge on which she was acquitted and failed to consider certain factors. We reject her contentions.

Sentencing is a discretionary function of the trial courts. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W. 2d 512, 519 (1971). Appellate courts have a strong policy against interference with that discretion. *State v. Johnson,* 74 Wis. 2d 26, 44, 245 N.W.2d 687, 694

(1976). If the record contains evidence that discretion was properly exercised when imposing sentence, we must affirm. *Cunningham v. State,* 76 Wis. 2d 277, 281, 251 N.W.2d 65, 67 (1977). To overturn a sentence, defendant must show some unreasonable or unjustifiable basis for the sentence in the record. *Johnson* at 44, 245 N.W.2d at 694.

Defendant was properly convicted on two counts of violating sec. 940.08, Stats., having caused two deaths through her wrongful act. *Compare State v. Rabe,* 96 Wis. 2d 48, 291 N.W.2d 809 (1980) (defendant properly charged with four counts of homicide by intoxicated use of vehicle where his single act of negligence, driving through a stop sign, caused four deaths). Each count on which she was convicted carries a maximum penalty of two years of imprisonment and a $10,000 fine. Sec. 939.50(3)(e), Stats. The choice between probation and incarceration is for the trial court. The trial court exercised its discretion by choosing incarceration for its deterrent effect as to other drivers. Discretion was not abused.

Defendant contends that to sentence to a term of fourteen months on each count is excessive. We disagree. Her maximum exposure for conviction on two counts was four years of incarceration and a $20,000 fine. Sec. 939.50(3)(e), Stats. The two terms will be served concurrently, resulting in a maximum of fourteen rather than forty-eight months of incarceration.

To support her claim that the trial court considered the charges of homicide by intoxicated use of a motor vehicle, defendant refers to parts of the trial court's statement when imposing sentence. Referring to acquittal on the intoxicated use charges, the trial judge said he knew "the people in this room and perhaps most of the people in the community will never accept that determina-

tion as being what in fact took place here," and that he had received letters favoring a stiff penalty on grounds that defendant was drunk when the accident occurred.

The parents of one of the victims attended the sentencing. Much of what the trial judge said was directed to the parents in acknowledgment that they and others disagreed with the verdict. Several times the judge said that that disagreement and other factors had made sentencing difficult.

The record affirmatively shows, however, that the judge sentenced defendant solely on the basis of charges for which the jury found her guilty. The trial judge said he could not determine whether the jury had reached a compromise verdict but that he had to sentence defendant on the basis of that verdict.

Finally, defendant contends that the trial judge failed to take into account the primary factors upon which a sentencing decision should be based. Those factors are the gravity of the offense, the offender's character and the public's need for protection. *Elias v. State*, 93 Wis. 2d 278, 284, 286 N.W.2d 559, 561 (1980). On the contrary, it was partially the combination of those factors which, in the court's own words, anguished it, and made the case difficult.

The court noted that two young people, through no fault of their own, had died by contact with defendant, but that she was not guilty of an intentional crime and had no criminal record. Speaking perhaps to the victims' families, the court said it did not believe in the concept of an eye for an eye and would not impose a retributive sentence. The court concluded that it must impose a prison sentence, that being the only way it could demonstrate to defendant and the community that people must bear responsibility for their conduct when operating

motor vehicles. The court said that if one less accident resulted because the sentence made one person think twice before driving a car "in that condition or whether to have someone else take them home or whether to get some sleep before they drive the car or slow down or be more attentive," then the case has served its purpose.

Defendant asserts that the court's language regarding "that condition" improperly alludes to the charge on which she was acquitted, operating a motor vehicle while intoxicated. We disagree. The court was referring to various conditions under which persons should not drive, whether intoxication or fatigue.

Accordingly, we find no abuse of discretion in imposing the sentence.

*By the Court.*—Judgment affirmed.