STATE of Wisconsin, Plaintiff-Appellant and
Cross-Respondent,

v.

Frederick J. WOLSKE, Defendant-Respondent and
Cross-Appellant.†

Court of Appeals

*No. 87–0533–CR. Submitted on briefs October 20, 1987.—
Decided January 20, 1988.*

(Also reported in 420 N.W.2d 60.)

† Petition to review denied.

On behalf of the plaintiff-appellant and cross respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general and *Daniel J. O'Brien,* assistant attorney general.

On behalf of the defendant-respondent and cross-appellant, the cause was submitted on the brief of *Daniel P. Fay* of *Law Firm of Daniel P. Fay, S.C.,* of Pewaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   The major issue is whether a person may be charged, convicted and punished for both homicide by *intoxicated operation* of a motorboat and homicide by *highly negligent operation* arising out of the same incident. The trial court held that even though the intoxication and negligence charges were neither multiplicious, in the classic sense of the term, nor lesser included offenses, multiple punishment would be inappropriate. It thereupon dismissed the charges without prejudice. We agree with the state

that the legislature intended to permit multiple prosecutions and punishments for these charges and that such intention is constitutional. We address other issues as well.

The facts are that defendant Frederick J. Wolske was operating a motorboat at an allegedly high rate of speed when it collided with another motorboat. The collision resulted in the death of one person and serious injury to another. Chemical tests indicated that Wolske's blood alcohol level was .224%.

The complaint charged three counts in relation to each victim. Regarding the deceased, Wolske was charged with (1) causing death by operating a boat while under the influence of an intoxicant contrary to sec. 940.09(1)(a), Stats.; (2) causing death by operating a boat while having a blood alcohol concentration (BAC) of .10% or more contrary to sec. 940.09(1)(b); and (3) causing death by a high degree of negligence in operating a boat, contrary to sec. 940.08(1), Stats.

Regarding the seriously injured victim, the counts were similar except that great bodily harm was substituted for death as the gravamen for the counts, thereby implicating sec. 940.25(1)(a) and (b) and sec. 940.245(1), Stats. This case comes to us following the trial court's dismissal of all charges.

■

A defendant may be charged and convicted of multiple crimes arising out of one criminal act if the legislature intends it. *Geitner v. State,* 59 Wis. 2d 128, 130–31, 207 N.W.2d 837, 839 (1973). *See also* sec. 939.65; Stats., and *Missouri v. Hunter,* 459 U.S. 359, 366–69 (1983).

■

A means of discerning legislative intent is the "additional element" test adopted in *Blockburger v.*

*United States,* 284, U.S. 299, 304 (1932), and codified in Wisconsin at secs. 939.66 and 939.71, Stats. Simply stated, if each statutory crime requires proof of a fact for conviction which the other does not require, then it can be said that the legislature has promulgated separate, distinct offenses providing for multiple convictions and punishments. *State v. Bohacheff,* 114 Wis. 2d 402, 411–12, 338 N.W.2d 466, 470–71 (1983).

A comparison of the elements of the statutes involved reveals that the negligence statutes, secs. 940.08 and 940.245, Stats., require the state to prove operation of a vehicle with a high degree of negligence, whereas the intoxication statutes, secs. 940.09 and 940.25, Stats., require the state to prove operation of a vehicle while under the influence of an intoxicant. *See State v. Caibaiosai,* 122 Wis. 2d 587, 593, 363 N.W.2d 574, 577 (1985); Wis J I—Criminal 1170.

Wolske contends, however, that this difference is merely superficial, and that the statutes therefore fail to meet the additional element test of *Blockburger.* This is so, he argues, because if the state proves operation of a vehicle while intoxicated, then under *Caibaiosai* it has also shown negligence per se. *Id.* at 595, 363 N.W.2d at 578. Wolske therefore concludes that there is no additional fact which must be proven under the negligence statutes which is not satisfied by a showing of intoxicated operation under the intoxication statutes.

Wolske is correct in asserting that it is negligence per se to operate a vehicle while intoxicated. *Id.* However, Wolske's position ignores the different historical facts the state must prove for conviction under the separate statutes. A violation of the intoxication statutes requires proof of intoxication but does not

182

require proof of erratic or negligent operation of a vehicle. *Id.* at 593, 600, 363 N.W.2d at 577, 581. Conversely, a violation of the negligence statutes requires proof of highly negligent operation of a vehicle, but does not require proof of intoxication. *See* secs. 940.08 and 940.245, Stats. Moreover, one can be intoxicated while operating a vehicle without doing so in a highly negligent manner and can be highly negligent in the operation of a vehicle without being intoxicated. Thus, the negligence and intoxication statutes require proof of distinct factual elements.

The distinction between the factual elements of the negligence and intoxication statutes becomes clearer when considering the issue of causation. Under the intoxication statutes, the state must prove a causal connection between a defendant's operation of a vehicle while intoxicated and the death or injury of the victim. *See Caibaiosai* at 594, 363 N.W.2d at 577. Negligence need not be shown as a causal element. *See id.* at 600, 363 N.W.2d at 581.

Under the negligence statutes, the state must prove a causal connection between the operation of a vehicle with a high degree of negligence and the victims' death or injury. *See* secs. 940.08 and 940.245, Stats. Thus, as shown through causation, the state is proving a fact under one statute—death or injury from intoxicated operation versus death or injury from highly negligent operation—that it is not proving under the other statute. This satisfies the *Blockburger* additional elements test.

In addition to examining whether the statutory language requires proof of additional elements, this

court also looks to the nature of the proscribed conduct and the appropriateness of multiple punishments to determine whether the legislature intended multiple prosecutions and convictions. *Bohacheff,* 114 Wis. 2d at 410, 338 N.W.2d at 470.

The conduct proscribed by the intoxication statutes is operating a vehicle while intoxicated and thereby causing death or great bodily harm. *See Caibaiosai,* 122 Wis. 2d at 591, 363 N.W.2d at 576. The intoxication statutes' purpose is to "provide maximum safety for all users of the highways of this state" from the harm threatened by "[o]peration of motor vehicles by persons who are under the influence of an intoxicant." *See id.* (quoting secs. 2051(13)(a)1 and 2051(13)(b)1, ch. 20, Laws of 1981).

The negligence statutes proscribe the conduct of operating a vehicle in a highly negligent manner, causing death or great bodily harm. *See* secs. 940.08 and 940.245, Stats. The apparent purpose of the negligence statutes is to provide maximum safety for highway users or, in this case, users of the waterways from the harm threatened by the operation of motor vehicles or boats in a highly negligent manner. *See id.; see also Hart v. State,* 75 Wis. 2d 371, 379–84, 249 N.W.2d 810, 813–15 (1977).

Thus, the nature of the conduct proscribed by each statute protects a distinct interest of the victim and the public. Where the statutes intend to protect multiple and varied interests of the victim and the public, multiple punishments are appropriate. *Bohacheff* at 416, 338 N.W.2d at 473. Moreover, multiple punishments are appropriate where the grounds for

punishment are different. *Id.* Here the grounds for punishment are significantly different. The intoxication statutes are grounded on the principle that persons should be punished for operation of a vehicle while intoxicated because it creates "a risk that will not be tolerated." *Caibaiosai* at 595, 363 N.W.2d at 578. The negligence statutes are grounded on the principle that persons should be punished for operation of a vehicle in a highly negligent manner creating unreasonable risk and high probability of death or harm to another. *See Hart,* 75 Wis. 2d at 382, 249 N.W.2d at 814.

The different conduct proscribed and different grounds for the negligence and intoxication statutes along with their distinct factual elements convince us that multiple prosecutions, convictions and punishments were intended by the legislature. We therefore agree with the state's appeal and conclude that the multiple charges in the complaint were properly brought. We reverse the trial court's order dismissing the complaint on multiplicity grounds.

Wolske also contends that the trial court properly dismissed the complaint on grounds of potential jury confusion. The court determined that confusion would result from the different standards of proof on the element of causation under the negligence and intoxication statutes. To escape liability on the intoxication charges, a defendant bears the burden of proving that the death or injury would have resulted even had he not been intoxicated. Secs. 940.09(2) and 940.25(2), Stats. As to the negligence charges, however, the state has the burden of proving beyond a reasonable doubt that the defendant's high degree of negligence caused the death or injury. Secs. 940.08 and 940.245, Stats.

185

While we understand the trial court's concern over jury confusion, we conclude that the trial court abused its discretion in ordering dismissal of the complaint as the remedy to potential confusion. Section 971.12(3), Stats., provides that where there is potential for prejudice to a defendant, the court may order separate trials for each count. The less drastic remedy of severance would serve the purpose of preventing jury confusion, *see Butala v. State,* 71 Wis. 2d 569, 579–80, 239 N.W.2d 32, 37 (1976), while at the same time preserving the state's right to pursue all charges which it is legally authorized to bring. Therefore, we remand to the trial court for consideration of severance under sec. 971.12(3) as a remedy for potential jury confusion.

Wolske argues in his cross-appeal that the trial court erred in denying his motion to dismiss the charges under secs. 940.09(1)(a) and 940.25(1)(a); Stats., on grounds that the statutes are unconstitutional. Wolske contends that the statutes impermissibly shift the burden of causation to the defendant for a violation of secs. 940.09(1)(a) and 940.25(1)(a).

A similar challenge was rejected by our supreme court in *State v. Caibaiosai,* 122 Wis. 2d 587, 363 N.W.2d 574 (1985). *State v. Kennedy,* 134 Wis. 2d 308, 315, 396 N.W.2d 765, 767 (Ct. App. 1986). The supreme court's decision is binding on this court, and therefore we hold the questioned statutes constitutional. *Id.*

Wolske also argues that secs. 940.09(1)(b) and 940.25(1)(b), Stats., causing death or injury by operation of a vehicle with a BAC of .10% or more, are unconstitutional because they provide an enhanced penalty for conduct which was not against the law at

186

the time of his boating accident. Operating a boat with a BAC of .10% or greater was not then illegal.

The task of defining criminal conduct is entirely within the legislative domain, *State v. Baldwin,* 101 Wis. 2d 441, 447, 304 N.W.2d 742, 746 (1981), and, within constitutional limitations, the legislature possesses the inherent power to prohibit and punish any act as a crime. *See Clausen v. Clerk of Circuit Court,* 537 F. Supp. 1233, 1236 (E.D. Wis. 1982); *see also* 22 C.J.S. *Criminal Law* § 13 (1961).

Here, through, secs. 940.09(1)(b) and 940.25(1)(b), Stats., the legislature has squarely proscribed causing death or injury by operation of a vehicle while the operator has a BAC of .10% or more. These are not "enhanced penalty" statutes without a lesser offense counterpart. Rather, the statutes represent the considered decisions of the legislature to prohibit certain conduct. Because the conduct prohibited is clearly set forth in the statutory language, warning Wolske and all others of the forbidden conduct, we conclude that the statutes are constitutional. *See State v. Muehlenberg,* 118 Wis. 2d 502, 509, 347 N.W.2d 914, 917 (Ct. App. 1984).

Wolske next challenges the sufficiency of the complaint on several grounds, arguing that the complaint was insufficient to show probable cause. A complaint must set forth facts that would lead a reasonable person to conclude that a crime had probably been committed and that the defendant named in the complaint was probably the culpable party. *State v. Stoehr,* 134 Wis. 2d 66, 74, 396 N.W.2d 177, 179 (1986). Adequacy of the complaint is tested in

a commonsense, and not hypertechnical, evaluation of the essential facts establishing probable cause. *Id.*

Wolske's contention is that the complaint fails to show probable cause that he operated his boat in a way that shows "ordinary negligence to a high degree" resulting in death or great bodily harm contrary to secs. 940.08 and 940.245, Stats. In support of the negligence charges, the complaint indicates that the collision occurred at approximately 3:00 a.m., after an afternoon and evening during which the defendant had been consuming alcohol. At the time of the collision, Wolske was operating his boat at approximately 40 miles per hour while doing "tail stands" in which the operator "guns" the motor of the boat to force the front end out of the water.

The complaint further states that Wolske's boat struck the other boat at a high rate of speed and without giving warning or taking evasive action even though Wolske knew that the other boat would possibly be stopped in the area where the collision occurred. Wolske and the operator of the other boat had just agreed to meet in that part of the lake. The collision occurred even though the other boat was parked with its "running lights and interior lights and the radio on" four to five minutes prior to the collision.

■■

These allegations are sufficient to lead a reasonable person to conclude that Wolske probably committed the crime of causing death or great bodily harm by operation of his boat with a high degree of negligence. A magistrate could conclude that operating a boat at 40 miles per hour, at night, while doing tail stands in an area where another boat is expected to be is negligent conduct creating a high probability of death

or great bodily harm. *See State v. Cooper,* 117 Wis. 2d 30, 38, 344 N.W.2d 194, 198 (Ct. App. 1983). Every driver knows or should know that the greater the speed, the greater the impact and the greater the probability of death or great bodily injury.[1] *Id.*

Wolske also contends that the complaint fails to show probable cause to believe that he was intoxicated at the time of the accident. In support of intoxication, the complaint indicates that Wolske engaged in consumption of alcohol from approximately 3:00 p.m. the afternoon preceding the accident until approximately 2:00 a.m. the morning of the accident. An officer investigating the accident noted that following the collision there was a strong odor of intoxicants on Wolske's breath, that Wolske's eyes were bloodshot and that his speech was slurred. Upon escorting Wolske to a telephone, the officer noticed that Wolske weaved as he walked and lost his balance. The officer then asked Wolske to perform a field sobriety test, and as the officer and Wolske walked outside to perform the test, Wolske lost his balance and had to sidestep to catch himself. Wolske then refused to perform any field sobriety tests. A blood alcohol test was performed on Wolske indicating a BAC of .224%.[2]

---

[1]Wolske states that there is nothing illegal or improper in operating a boat in the manner he did (presumably referring to the speed and tail stands) and concludes that he was therefore not negligent in any way. However, the legality or illegality of the actions is irrelevant. *State v. Cooper,* 117 Wis. 2d 30, 38, 344 N.W.2d 194, 198 (Ct. App. 1983).

[2]Wolske argues that much of the information provided in the complaint is unusable in showing probable cause, including the blood test results. He contends that the complaint fails to state sufficient detail concerning the basis of its allegations. We disagree. A complaint need only assert essential facts, not *all*

These allegations in the complaint strongly support a finding of probable cause to believe that Wolske was intoxicated at the time of the accident. A fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious. *Lofton v. State,* 83 Wis. 2d 472, 478, 266 N.W.2d 576, 578 (1978).

Wolske's final challenge to the complaint is on grounds that the citizen witnesses who provided information used in the complaint are unreliable. One witness, Mark Kosobucki, was the driver of the boat which Wolske collided with. The other witness is Mark's wife, Francine Kosobucki. Wolske contends that Mark and Francine are unreliable because they have an interest in shifting blame away from Mark as driver of the second boat and towards Wolske.

Wolske relies on *State v. Marshall,* 92 Wis. 2d 101, 284 N.W.2d 592 (1979), to argue that in determining probable cause when the credibility of witnesses is challenged the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 114 (1964), should be used. The *Aguilar* test requires a complaint to establish (1) the underlying circumstances which show reason to believe the information is credible, and (2) the underlying circumstances which show that the manner in which the informant reached his conclusions was reliable. *Marshall* at 114, 284 N.W.2d at 597. Wolske contends that the complaint fails to show probable cause under this test, while the state argues that it does.

evidentiary facts, which clearly indicate what the defendant is alleged to have done. *State v. Williamson,* 109 Wis. 2d 83, 87, 325 N.W.2d 360, 363 (Ct. App. 1982), *rev'd on other grounds,* 113 Wis. 2d 389, 335 N.W.2d 814, *cert. denied,* 464 U.S. 1018 (1983).

However, in *Illinois v. Gates,* 462 U.S. 213 (1983), the United States Supreme Court abandoned the two-pronged test established in *Aguilar.* In its place the Court held that in determining probable cause the "totality of the circumstances" should be considered. *Id.* at 238. The Court reasoned that a totality of the circumstances analysis was more consistent with the idea of probable cause being a "practical, nontechnical" evaluation than was the rigid two-pronged *Aguilar* test. *Id.* at 230–31.

The *Gates* totality test has been adopted in Wisconsin in various contexts as applicable to "situations involving the traditional probable cause determination." *See e.g., State v. Boggess,* 115 Wis. 2d 443, 453–54, 340 N.W.2d 516, 522–23 (1983). We therefore conclude that it is applicable here in assessing probable cause based on the credibility of citizen witnesses, replacing the *Aguilar* two-pronged test as used in *Marshall.*

Under the *Gates* test, the value of information provided by an informant or citizen witness is measured by the totality of the circumstances. *Gates* at 230. The magistrate who assesses probable cause must make a practical, commonsense decision whether under all the circumstances provided in the complaint, including veracity and the basis of knowledge of persons who provide information, there is a fair probability that a crime has been committed and the defendant committed it. *Cf. id.* at 238. In determining the overall reliability of witnesses, the totality of the circumstances analysis allows a deficiency in indicia demonstrating a witness' veracity to be compensated for by a strong showing concerning the witness' basis

191

of knowledge or by some other indicia of reliability. *Id.* at 233. A reviewing court must ensure only that the magistrate had a substantial basis for his or her determination. *Id.* at 238–39.

Here, the complaint clearly identifies Mark and Francine Kosobucki, indicating that they are believed to be truthful and reliable. There is also a strong showing of Mark and Francine's basis of knowledge. Mark and Francine each reported information gained by direct personal observation of the events which occurred. Mark was with Wolske throughout the day and present on the boat Wolske collided into; Francine viewed the accident scene from a pier at the edge of the lake. There is also present sufficient detail in the information provided by Mark and Francine to indicate reliability, with the complaint indicating step by step how they each made their observations and what they observed. *See Boggess,* 115 Wis. 2d at 455–56, 340 N.W.2d at 523–24. We conclude, therefore, that under the totality of circumstances there are sufficient indicia of reliability in the Kosobuckis for a determination of probable cause.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.