STATE of Wisconsin, Plaintiff-Respondent,

v.

Barbara J. BABBITT, Defendant-Appellant.

Court of Appeals

*No. 94–0703. Submitted on briefs September 26, 1994.—Decided October 18, 1994.*

(Also reported in 525 N.W.2d 102.)

352

For the defendant-appellant the cause was submitted on the briefs of *Wayne A. Arnold* of Rice Lake.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *Jerome S. Schmidt*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Barbara Babbitt appeals an order finding that there was probable cause for her arrest under § 346.63(1)(a), STATS.,[1] and revoking her license under § 343.305(10), STATS.,[2] for unreasonably refusing to take an Intoxilyzer test. Babbitt contends that the trial

---

[1] Section 346.63(1)(a), STATS., provides:

(1) No person may drive or operate a motor vehicle while:

(a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving . . . .

[2] Section 343.305(10), STATS., states:

court erroneously relied on her refusal to submit to a field sobriety test in determining that there was probable cause for her arrest. Further, Babbitt contends that absent evidence of her refusal to take the field sobriety test, there was insufficient evidence to establish probable cause for her arrest under § 346.63(1)(a). Because we conclude that the court properly relied upon the defendant's refusal to submit to a field sobriety test in determining the existence of probable cause and that there was sufficient evidence to establish probable cause absent evidence of Babbitt's refusal to take the field sobriety test, we affirm the order.

The facts are undisputed. At approximately 2 a.m. on September 12, 1993, a citizen advised Larry Tripp, a Barron City police officer, that she had followed a truck-like vehicle from Turtle Lake to Barron County and that the operator of the truck had been driving erratically. The citizen was unable to provide the officer with a description of the vehicle other than identifying it as a truck-like vehicle. The motorist did, however, indicate the group of vehicles in which the truck had been driving. Tripp eventually caught up with the group of vehicles, which included a gray Blazer-type vehicle driven by Babbitt. This was the only vehicle in the group consistent with the citizen's description.

(a) If the court determines under sub. (9)(d) that a person improperly refused to take a test or if the person does not request a hearing within 10 days after the person has been served with the notice of intent to revoke the person's operating privilege, the court shall proceed under this subsection. If no hearing was requested, the revocation period shall begin 30 days after the date of the refusal. If a hearing was requested, the revocation period shall commence 30 days after the date of refusal or immediately upon a final determination that the refusal was improper, whichever is later.

As Tripp followed the vehicle, he observed it cross the centerline three times and the eastbound dividing line once in a quarter-mile stretch of highway. At that point, Tripp activated his emergency lights and pulled the vehicle to the side of the road. Tripp walked to the side of Babbitt's vehicle at which time Babbitt lowered her window. Once the window was down, Tripp detected the odor of alcohol emanating from the driver. Tripp then requested Babbitt's driver's license and she complied. Tripp observed that Babbitt's eyes were bloodshot and glassy. As Tripp ran a driver's license check, Sergeant Kohl arrived at the scene to assist. Tripp and Kohl then requested Babbitt to exit her vehicle. Babbitt asked several times why she had to get out of her vehicle before ultimately complying with the officers' request.

After exiting her vehicle, the officers requested Babbitt to walk to the rear of her vehicle. Again, Babbitt repeatedly asked the officers why she had to walk to the rear of the vehicle before she eventually complied. Kohl noted that Babbitt's balance appeared to be poor, that she swayed as she walked and that she appeared to be using the vehicle to steady herself. Tripp noted that Babbitt walked slowly and seemed to be watching where she was going. Tripp requested Babbitt to perform a field sobriety test, but Babbitt refused. After Babbitt's refusal, Tripp testified that he questioned the passenger in the vehicle, Paula Siewert, who informed him that she and Babbitt had a few drinks between 9 p.m. and 1:30 a.m. Tripp further testified that although Babbitt was generally polite, she displayed an uncooperative attitude in response to the officers' requests.

The officers ultimately placed Babbitt under arrest for driving under the influence of an intoxicant

in violation of § 346.63(1)(a), STATS. The officers then took Babbitt to the police station where she was asked to submit to an Intoxilyzer test to determine her blood-alcohol level. Babbitt refused.

At the refusal hearing, the court found that the officers had probable cause to arrest Babbitt for driving under the influence of an intoxicant and that her refusal to submit to the Intoxilyzer test was therefore unreasonable under § 343.305(10), STATS. The trial court, however, found that absent evidence of Babbitt's refusal to submit to the field sobriety test, there was no probable cause for her arrest. The court then entered an order revoking Babbitt's license and she appeals.

Babbitt first contends that absent evidence of her failure to submit to the field sobriety test, the evidence was not sufficient to establish probable cause for her arrest. In support of this contention, Babbitt notes that the trial court specifically found that if it did not take into account her refusal to submit to the field sobriety test, the evidence would be insufficient to establish probable cause. Therefore, she contends that because evidence of her refusal to submit to the field sobriety test is not admissible, the trial court erred by finding that probable cause existed for her arrest.

Whether undisputed facts constitute probable cause is a question of law that we review without deference to the trial court. *State v. Drogsvold*, 104 Wis. 2d 247, 262, 311 N.W.2d 243, 250 (Ct. App. 1981). In determining whether probable cause exists, we must look to the totality of the circumstances to determine whether the "arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe . . . that the defendant was operating a motor vehicle while under the influence of an intoxicant."

*State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300, 308 (1986). Probable cause to arrest does not require "proof beyond a reasonable doubt or even that guilt is more likely than not." *State v. Welsh*, 108 Wis. 2d 319, 329, 321 N.W.2d 245, 251 (1982). It is sufficient that a reasonable officer would conclude, based upon the information in the officer's possession, that the "defendant probably committed [the offense]." *State v. Koch*, 175 Wis. 2d 684, 701, 499 N.W.2d 152, 161 (1993).

■

Here, the undisputed facts disclosed by the record reveal that: (1) Tripp received a citizen's report that the operator of a truck traveling in a particular group of vehicles was driving erratically; (2) Tripp observed Babbitt's vehicle, which was consistent with the citizen's description, cross the centerline three times and the eastbound dividing line once in a quarter-mile stretch; (3) Tripp detected the odor of alcohol eminating from Babbitt's car when she lowered the window; (4) Babbitt's eyes were glassy and bloodshot; (5) Babbitt's walk to the rear of the vehicle was slow and deliberate; and (6) Babbitt consistently displayed an uncooperative attitude and reluctantly complied with the officers' various requests. These facts are sufficient to allow a reasonable officer to conclude that Babbitt was "probably" driving while under the influence of alcohol in violation of § 346.63(1)(a), STATS. Therefore, even without the evidence of Babbitt's failure to submit to the field sobriety test, we conclude that probable cause existed for her arrest.[3]

---

[3] Because we conclude that the information possessed by officer Tripp was sufficient to constitute probable cause, we need not address the State's contention that sergeant Kohl's observations may be considered under the collective information rule in determining whether probable cause existed. Kohl

The trial court specifically found that probable cause did not exist in the absence of Babbitt's refusal to submit to the field sobriety test. We conclude, however, that probable cause existed regardless of this factor. Nevertheless, because both the State and Babbitt have requested that we consider whether a defendant's refusal to submit to a field sobriety test is admissible for the purpose of establishing probable cause to arrest, we address this issue as an alternative basis for affirming the trial court's judgment. In doing so, we note that this is not a criminal action and that constitutional constraints protecting criminal defendants are therefore inapplicable. For purposes of this appeal, however, our analysis will consider the constitutional issue of self-incrimination in determining whether a defendant's refusal to submit to a field sobriety test may be used as evidence of intoxication.

■

In Wisconsin, it is clear that a defendant's refusal to submit to an Intoxilyzer test is admissible as evidence of intoxication. *State v. Albright*, 98 Wis. 2d 663, 668-69, 298 N.W.2d 196, 200 (Ct. App. 1980); *see also South Dakota v. Neville*, 459 U.S. 553 (1983). Babbitt, however, contends that there are important distinctions between a defendant's refusal to take an Intoxilyzer test and a defendant's refusal to perform a field sobriety test. First, Babbitt argues that unlike the field sobriety test, the Intoxilyzer test is mandated by statute. Section 343.305(1), STATS. Second, Babbitt contends that while under § 343.305(3)(a), a defendant

---

testified that Babbitt appeared to have poor balance, that she swayed when she walked and that her speech was slurred. Although this information is relevant to the issue of probable cause, it is not necessary to reach the conclusion that probable cause existed for Babbitt's arrest.

must be advised of the consequences of his or her refusal to submit to an Intoxilyzer test, there is no similar requirement that an officer inform a defendant of the consequences of his or her refusal to perform a field sobriety test.[4] Therefore, because of these distinctions, Babbitt contends that a refusal to submit to a field sobriety test may not be used as evidence of probable cause to arrest. We are not persuaded.

In *Albright*, the court noted that evidence of a defendant's refusal to submit to an Intoxilyzer test should be admissible because the "reasonable inference from refusal to take a mandatory breathalyzer test is consciousness of guilt." *Id.* at 668, 298 N.W.2d at 200. Therefore, the court concluded that this evidence should be admissible because it is relevant to the issue of whether the defendant was intoxicated. We conclude that just as the refusal to take an Intoxilyzer test is indicative of consciousness of guilt so too is the refusal to perform a field sobriety test. The purpose of the field sobriety test is to make a preliminary determination of whether the defendant is intoxicated. The most plausible reason for a defendant to refuse such a test is the fear that taking the test will expose the defendant's guilt. Thus, because the defendant's refusal to submit to a field sobriety test is some evidence of consciousness

---

[4] Although Babbitt makes note of this distinction, she does not contend that a defendant must be provided with warnings of the consequences of his or her refusal to submit to the test prior to its administration. Therefore, we do not address this argument. Nevertheless, we note that it may be desirable for the police departments of this State to advise suspect's who refuse to perform a field sobriety test that their refusal may be used as evidence of intoxication.

of guilt, this evidence should be admissible for the purpose of establishing probable cause to arrest.

Moreover, a person who performs the field sobriety test should not be placed in a worse position by virtue of his or her compliance with an officer's request than a defendant who refuses to cooperate with the police. If evidence of a defendant's refusal to perform a field sobriety test is excluded from the probable cause determination, a significant benefit will accrue to those who refuse the test. Public policy and the state's interest in combatting the problem of intoxicated drivers militates against such a result.

Babbitt, however, contends that because a suspect is not required to respond to police inquiries during a *Terry* stop, *State v. Goyer*, 157 Wis. 2d 532, 538, 460 N.W.2d 424, 426 (Ct. App. 1990), Babbitt was within her rights to refuse to perform the field sobriety test. Therefore, Babbitt argues that because she was within her rights to refuse the test, her refusal may not be used against her as evidence of probable cause to arrest. We disagree.

Under the fifth amendment, the State is barred "from compelling 'communications' or 'testimony.' " *Neville*, 459 U.S. at 559; *Albright*, 98 Wis. 2d at 669, 298 N.W.2d at 200. Requiring a suspect to respond to police inquiries would certainly violate the suspect's right against self-incrimination because such a requirement would result in the compulsion of testimony. Thus, although not expressly stated in *Goyer*, suspects have a constitutional right under the fifth amendment to refuse to respond to police inquiries. However, as the court noted in *Albright*, "Wisconsin drivers have no constitutional right to refuse to take the breathalyzer." *Id.* at 669, 298 N.W.2d at 200. This

is so because "the evidence obtained by a breathalyzer test, though incriminating, is not testimony or evidence relating to a communicative act." *Id.* Furthermore, because the State provides the defendant with the option of performing or refusing the test, there is no compulsion in violation of the fifth amendment. *Neville,* 459 U.S. at 559. Therefore, because "[t]here is no self-incrimination within the protections of the fifth amendment of the United States Constitution, or article I, § 8 of the Wisconsin Constitution[ ]," the court concluded that evidence of a defendant's refusal to submit to an Intoxilyzer test may be used as evidence of intoxication. *Albright,* 98 Wis. 2d at 669, 298 N.W.2d at 200.

Like the Intoxilyzer test, suspects also have no fifth amendment right to refuse to perform a field sobriety test. As the court noted in *Farmer v. Commonwealth,* 404 S.E.2d 371, 373 (Va. Ct. App. 1991), there is

> no reason to distinguish between a refusal to submit to a blood test and the act of refusing to submit to a field sobriety test for purposes of what constitutes testimony or compulsion. In either case the incriminating inference is drawn not from the testimonial act of the accused, but from the physical act of the suspect.

Field sobriety tests are not testimonial in nature because the suspect does not intend to convey a statement as to his or her state of sobriety by performing the test. Furthermore, field sobriety tests involve no requirement that the suspect make admissions or respond to police inquiries regarding prior alcohol use. Finally, there is no compulsion in violation of the fifth

amendment because the suspect is not required to perform the test. We thus conclude that, although Babbitt had a fifth amendment right to refrain from answering the officers' questions, her refusal to perform the field sobriety test was not protected by the fifth amendment. Therefore, admission of Babbitt's refusal to perform a field sobriety test as evidence of probable cause to arrest did not violate her fifth amendment rights.

Finally, we note that *State v. Wolske*, 143 Wis. 2d 175, 420 N.W.2d 60 (Ct. App. 1988), lends further support to our conclusion that a defendant's refusal to submit to a field sobriety test may be used as evidence of probable cause to arrest. In *Wolske*, the defendant argued that there was insufficient evidence to establish probable cause that he was intoxicated. *Id.* at 188, 420 N.W.2d at 64. In finding that there was sufficient evidence of probable cause, the court noted:

> In support of intoxication, the complaint indicates that Wolske engaged in consumption of alcohol from approximately 3:00 p.m. the afternoon of the accident until 2:00 a.m. the morning of the accident. An officer investigating the accident noted that following the collision there was a strong odor of intoxicants on Wolske's breath, that Wolske's eyes were bloodshot and that his speech was slurred. Upon escorting Wolske to a telephone, the officer noticed that Wolske weaved as he walked and lost his balance. The officer then asked Wolske to perform a field sobriety test, and as the officer and Wolske walked outside to perform the test, Wolske lost his balance and had to sidestep to catch himself. *Wolske then refused to perform any field sobriety tests.*
>
> . . . .

> These allegations in the complaint strongly support a finding of probable cause . . . .

*Id.* at 189, 420 N.W.2d at 65 (emphasis added).

Although the court did not expressly rely on the defendant's failure to perform the field sobriety test in concluding that probable cause existed, the clear implication of this holding is that it was proper for the court to consider the refusal in making the probable cause determination. Our reading of *Wolske* is consistent with the holdings of several other jurisdictions that have directly addressed this issue. *See Summers v. State of Utah*, 927 F.2d 1125 (10th Cir. 1991) (defendant's refusal to perform a field sobriety test may be used as evidence of probable cause); *Marvin v. DMV*, 161 Cal. App. 3d 717 (1984) (refusal to take the field sobriety test could be interpreted as consciousness of guilt); *Farmer*, 404 S.E.2d at 373 (use of defendant's refusal to take a field sobriety test as evidence of intoxication does not violate the defendant's right against self-incrimination). We therefore conclude that a defendant's refusal to submit to a field sobriety test may be used as evidence of probable cause.

In the interest of clarity, we note that our conclusion should not be construed to mean that a defendant's refusal to submit to a field sobriety test may be used as evidence at trial. We hold only that a defendant's refusal to submit to such a test may be used as evidence of probable cause to arrest. Therefore, because Babbitt's refusal was properly used for the purpose of establishing probable cause to arrest, we conclude that the trial court correctly found that her refusal to submit to the Intoxilyzer test was unreasonable. The order is therefore affirmed.

*By the Court.*—Order affirmed.