STATE of Wisconsin,
Plaintiff-Respondent,

v.

Ray Anthony HEMPHILL,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP1350–CR. Submitted on briefs June 6, 2006.
—Decided August 15, 2006.*

2006 WI App 185

(Also reported in 722 N.W.2d 393.)

† Petition to review denied 11/6/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy A. Provis* of Pt. Washington.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Michael S. Sanders*, assistant attorney general.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. CURLEY, J.   Ray Anthony Hemphill appeals the judgment, entered on a jury verdict, convicting him of physical abuse of a child by recklessly causing great bodily harm, contrary to Wis. Stat. § 948.03(3)(a) (2003–04).[1] Hemphill argues that the trial court's refusal to give the jury a mistake instruction violated his due process right to present a defense. Because the instruction on the mistake defense applies only to criminal charges with a "state of mind" element, *e.g.*, an intentional crime, and because Hemphill was charged with a crime that had no state of mind element, the trial court properly exercised its discretion in refusing to give the instruction. We affirm.

## I. BACKGROUND.

¶ 2.   Hemphill was charged with one count of physical abuse of a child by recklessly causing great bodily harm following the death of eight-and-one-half-year-old Terrence Cottrell. According to the testimony admitted at trial, Hemphill was a minister of the Faith Temple of the Apostolic Church.[2] The victim, who suffered from autism, was the son of Pat Cooper. Both

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Hemphill had not received any formal training for the ministry, but rather, was ordained by his brother who is the pastor of the church.

Cooper and Terrence attended the Faith Temple of the Apostolic Church. A tenet of the church is a belief in faith healing. Cooper had asked Hemphill for help for her son as his autistic condition often caused Terrence to act bizarrely and to engage in destructive behavior. Hemphill believed this behavior was due to Terrence's being possessed by demons and that he could "cure" Terrence by casting the demons out of Terrence's body. To that end, Hemphill held a series of services in an attempt to "cure" Terrence. The method used to "cure" Terrence was to have him lie down on the floor and be physically held down by others while Hemphill yelled things into Terrence's ear.

¶ 3.   On August 22, 2003, a session was held in an attempt to "cure" Terrence. It was a very hot evening, and several members of the congregation, including Terrence's mother, held down Terrence's arms and legs while Hemphill either had his knee on Terrence's chest, as reported by one witness, or he laid across Terrence's chest, as Hemphill stated to the police.[3] The prayer service lasted approximately one and one-half to two hours. Terrence struggled to free himself during the middle of the service, but then stopped struggling. When Hemphill stood up, the members discovered that Terrence was not breathing. When attempts to revive him proved unsuccessful, a "911" call was made. When the fire department arrived, Hemphill first said that Terrence had been running around with some other boys and had collapsed. Later, Hemphill told them that Terrence was praying when he collapsed. When inter-

---

[3] Neither Hemphill nor the other church members who held Terrence down (including Terrence's mother) testified at trial. Instead, their earlier statements to police were entered into evidence.

viewed by the police, Hemphill admitted to laying across Terrence's chest in an effort to prevent him from moving or hurting anyone.

¶ 4. The medical examiner testified that an autopsy revealed Terrence's cause of death was "mechanical asphyxia due to compression, prolonged compression of his chest that restricted his respirations."

¶ 5. After the close of testimony, the trial court held a jury instruction conference. Hemphill requested that WIS JI—CRIMINAL 770, modeled after WIS. STAT. § 939.43(1), dealing with "mistake," be given. Section 939.43(1) reads: "An honest error, whether of fact or of law other than criminal law, is a defense if it negatives the existence of a state of mind essential to the crime." The trial court explained that it declined to give that instruction to the jury because the requested instruction touches on the state of mind of the accused, and the charge lodged against Hemphill did not have a state of mind element. Rather, the court reasoned, Hemphill was charged with a crime that required the State to prove that Hemphill's *conduct* was reckless. In other words, because WIS. STAT. § 948.03 does not contain a state of mind or mental element, such as proving that someone acted "intentionally" when committing a crime, an instruction on "mistake" was irrelevant. Hemphill's attorney objected. The jury convicted Hemphill and he was sentenced to two years, five months of confinement, and seven years, five months of extended supervision.[4] This appeal follows.

---

[4] We note that the written explanation of "determinate sentence" found in the record is inaccurate. The first sentence reads: "The total length of your sentence for count one is ten years." However, the two-part sentence only adds up to nine years, ten months. On remand, the document should be corrected to accurately reflect the trial court's sentence.

## II. ANALYSIS.

¶ 6. Hemphill submits that in declining to give jury instruction WIS JI—CRIMINAL 770, addressing the mistake defense, the trial court deprived him of a defense to the criminal charge of physical abuse of a child by recklessly causing great bodily harm, and thus, violated his due process rights. Hemphill submits that he had previously instructed Terrence's mother to not give Terrence his medication until after the prayer sessions, and that evidence admitted into the record suggested that Terrence's mother not only may have medicated him before the service on the day in question, but also that she may have given Terrence a double dose of his medication before the prayer session.[5] Thus, the mistake would be Hemphill's belief that Terrence was unmedicated and in the same physiological state on the day of his death as he had been at previous prayer sessions.

¶ 7. Hemphill contends that the language found in WIS. STAT. § 948.03(1) must be "harmonized" with the definition found in WIS. STAT. § 939.24. Section 948.03(1) reads: "DEFINITIONS. In this section, 'recklessly' means conduct which creates a situation of unreasonable risk of harm to and demonstrates a conscious disregard for the safety of the child." However, § 939.24(1) reads: "In this section, 'criminal recklessness' means that the actor creates an unreasonable

---

[5] The State submits that the "mistake" defense lacks a factual basis in the record. While the evidence supporting Hemphill's mistake theory is thin, we decline to address the State's argument because our determination regarding the "mistake" instruction resolves the matter. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk . . . ." As Hemphill points out, criminal recklessness, as defined in § 939.24, has a requirement that the actor must not only create an unreasonable and substantial risk of death, but also be aware of the risk. Thus, he submits, given the § 939.24 definition that requires that he knew of the risk his conduct posed to Terrence, he was entitled to the mistake instruction. We disagree with Hemphill's interpretation.

¶ 8. A trial court "has broad discretion in deciding whether to give a particular jury instruction." *State v. Fonte*, 2005 WI 77, ¶ 9, 281 Wis. 2d 654, 698 N.W.2d 594. The trial court "must exercise its discretion to 'fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence.' " *Id.* (citation omitted). On appeal, we will reverse and order a new trial "[o]nly if the jury instructions, as a whole, misled the jury or communicated an incorrect statement of law . . . ." *State v. Laxton*, 2002 WI 82, ¶ 29, 254 Wis. 2d 185, 647 N.W.2d 784. " 'If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.' " *Id.* (citation omitted). We independently review whether a jury instruction is an accurate statement of the law applicable to the facts of a given case. *State v. Groth*, 2002 WI App 299, ¶ 8, 258 Wis. 2d 889, 655 N.W.2d 163. While a criminal defendant is entitled to a jury instruction on a theory of defense, to be entitled to a jury instruction setting forth a defense to the crime charged, sufficient evidence must exist in the record to support it. *See State v. Coleman*, 206 Wis. 2d 199, 212–13, 556 N.W.2d 701 (1996).

205

¶ 9.  We first determine that the definition in Wɪs. Sᴛᴀᴛ. § 948.03 is distinct from the definition found in Wɪs. Sᴛᴀᴛ. § 939.24, and need not be harmonized. Second, support exists for our conclusion that the mistake defense was not a proper defense in this case.

¶ 10.  The pertinent parts of Wɪs. Sᴛᴀᴛ. § 939.24, state:

> **(1)** In this section, "criminal recklessness" means that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk . . . .

> **(2)** Except as provided in ss. 940.285, 940.29, 940.295, and 943.76, if criminal recklessness is an element of a crime in chs. 939 to 951, the recklessness is indicated by the term "reckless" or "recklessly".

¶ 11.  The Judicial Council Note following § 939.24 seemingly supports Hemphill's position. It reads:

> **Judicial Council Note, 1988:** This section is new. It provides a uniform definition of criminal recklessness, the culpable mental state of numerous offenses. Recklessness requires both the creation of an objectively unreasonable and substantial risk of human death or great bodily harm and the actor's subjective awareness of that risk.

Despite the statute's all-encompassing statement that the definition applies "if criminal recklessness is an element of a crime in chs. 939 to 951" (which would ostensibly include § 948.03), the definition is used if recklessness is indicated by the term "reckless" or "recklessly" (§ 939.24(2)), and despite the Judicial Council Note's suggestion that this statute "provides a uniform definition of criminal recklessness," the word

"recklessly" used in § 948.03 does not fall within § 939.24's definition of recklessly. This is so because, when courts construe statutes, specific language controls over general language. *State v. Larson*, 2003 WI App 235, ¶ 6, 268 Wis. 2d 162, 672 N.W.2d 322 ("Where two statutes relate to the same subject matter, the specific statute controls the general statute."). Inasmuch as § 948.03 sets out its own unique definition of "recklessly," the general definition of criminal recklessness does not apply.[6] Indeed, the note following the standard jury instruction, WIS JI—CRIMINAL 2111, acknowledges that the definitions are different: "2. The definition of 'recklessly' is the one provided in § 948.03(1). Note that this definition is different from the definition of 'criminal recklessness' in § 939.24."

¶ 12. Further, extrapolating from the holding in *State v. Lindvig*, 205 Wis. 2d 100, 555 N.W.2d 197 (Ct. App. 1996), we are satisfied that Hemphill was not entitled to the mistake jury instruction. Lindvig was charged with causing injury to another by negligent operation of a dangerous weapon. *Id.* at 104. At the jury instruction conference, Lindvig requested that the jury be given the mistake instruction. *Id.* The trial court declined to give the instruction, concluding that this defense was not available in a criminal negligence case. *Id.* In affirming the trial court, this court stated:

[6] We note that both WIS. STAT. § 948.03 and WIS. STAT. § 939.24 were created by the legislature in 1987. It appears that the legislature believed that statutes criminalizing conduct where children were the potential victims needed a higher degree of protection from reckless conduct than statutes dealing with adult victims, and thus, a more encompassing definition of "recklessly" was used rather than that found in § 939.24.

207

In criminal negligence cases, the emphasis is on the conduct, not the actor's state of mind. *Hart v. State,* 75 Wis. 2d 371, 383 n.4, 249 N.W.2d 810, 815 (1977). . . . In *State v. Cooper,* 117 Wis. 2d 30, 344 N.W.2d 194 (Ct. App. 1983), we construed § 940.08, Stats., 1981–82, which is similar to § 940.24, Stats., in concluding that the test for criminal negligence "is purely objective. The crime is complete without criminal intent." *Id.* at 39, 344 N.W.2d at 199.

Following *Hart* and *Cooper,* we conclude that Lindvig's criminal intent is not relevant to whether he is guilty of negligent use of a dangerous weapon. Rather, the relevant inquiry is whether a reasonable person, under the same or similar circumstances, would realize that the conduct creates a substantial and unreasonable risk of death or great bodily harm. Because Lindvig's subjective state of mind is not essential to the crime of negligent operation of a dangerous weapon, he cannot assert the defense of mistake under § 939.43(1), Stats.

*Lindvig,* 205 Wis. 2d at 105–06 (footnotes omitted).

¶ 13.   The same logic applies here. The charge of physical abuse of a child by recklessly causing great bodily harm does not require any criminal intent. As the trial court instructed, the State needed to prove only that Hemphill caused great bodily harm to Terrence Cottrell; that Hemphill recklessly caused such harm; and Terrence Cottrell had not attained the age of 18 years at the time of the incident. *See* Wis JI—Criminal 2111.

¶ 14.   With respect to "recklessly," the trial court again utilized the standard jury instruction found in Wis JI—Criminal 2111, and instructed that:

Recklessly means that the Defendant's conduct created a situation of unreasonable risk of harm to

208

Terrance Cottrell, Junior and demonstrated a conscious disregard for his safety.

In determining whether the conduct created an unreasonable risk of harm and showed a conscious disregard for the safety of Terrance Cottrell, Junior, you should consider all the facts relating to the conduct including whether the – what the Defendant was doing, why he was doing it, how dangerous the conduct was, how obvious the danger was, and whether the conduct showed any regard for the child's safety.

¶ 15.  Like the negligence charge brought against Lindvig, here no criminal intent needed to be proven to meet the elements of the charge brought against Hemphill; it is an objective test having no subjective state of mind element. Hemphill need not have intended to harm Terrence or have been aware of the risk his conduct posed to Terrence's well-being in order to be found guilty. It was his conduct, not his intent, which brought the charge. The State's proof—that Hemphill laid across the chest of an eight and one-half-year-old boy in a hot, unairconditioned room, for up to two hours—was conduct that created an unreasonable risk of harm to Terrence and demonstrated a conscious disregard for his safety, and was sufficient to satisfy all the elements of the crime. Hemphill's apparent belief that Terrence was not medicated was not a defense to the charge. For the reasons stated, we affirm.

*By the Court.*—Judgment affirmed.