# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2021AP1689-CR

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DREAMA F. HARVEY,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | October 6, 2022 |
| Submitted on Briefs: | June 27, 2022 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, Graham, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard A. Coad* of *Coad Law Office, S.C*, Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sara Lynn Shaeffer*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

October 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

| | |
|---|---|
| Appeal No. **2021AP1689-CR** | Cir. Ct. No. **2015CF95** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DREAMA F. HARVEY,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Jackson County: MARK L. GOODMAN, Judge. *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

¶1 FITZPATRICK, J. Dreama Harvey appeals a judgment of the Jackson County Circuit Court convicting her of one count of first degree reckless homicide by delivery of heroin ("count 1") and a separate charge of delivery of heroin ("count 2"). Regarding count 1, the State presented evidence at trial that

Harvey delivered heroin to D.B., and D.B. died later that same night as a result of ingesting that heroin.[1]  As for count 2, the State presented evidence that Harvey delivered a second packet of heroin to D.B. before his death, but D.B. did not ingest that heroin.[2]

¶2    The parties agree that the State did not present evidence that a person in addition to Harvey was implicated in the delivery of heroin to D.B. that was the basis for count 1.  The jury instruction read to the jury by the circuit court, and the written instruction given to the jury for its deliberations, for count 1 instructed the jury on the State's chosen method of proof that Harvey delivered the heroin directly to D.B. that resulted in D.B.'s death.  However, the written and read instructions also included two other methods of proof which did not require that Harvey directly delivered heroin to D.B.:  Harvey aided and abetted another in the delivery of heroin to D.B. as a party to a crime ("PTAC"); and Harvey was one participant in the chain of delivery of heroin to D.B., contrary to WIS. STAT. § 940.02(2)(a)3. (we refer to this method of proof as "chain of delivery").[3]  In general verdicts, the jury convicted Harvey of both counts.

---

[1]  We refer to the victim as "D.B.," rather than by name, because he was the victim of a crime.  *See* WIS. STAT. RULE 809.86(4) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  The notice of appeal states that Harvey appeals the judgment of conviction.  However, in briefing, Harvey does not argue that her conviction on count 2 was erroneous.  Accordingly, we discuss matters concerning count 2 only as those relate to the parties' arguments about count 1.

[3]  WISCONSIN STAT. § 940.02(2)(a)3. provides, in pertinent part:

¶3      On appeal, Harvey argues that the judgment of conviction for count 1 must be reversed and a new trial granted.  According to Harvey, the circuit court violated her right to due process by:  giving the jury a legally inaccurate instruction regarding first degree reckless homicide; and instructing the jury on two methods of proof that were not supported by evidence sufficient to convict her.  Harvey further contends that reversal of her conviction is required because, in violation of a directive of our supreme court, the circuit court altered the written jury instructions given to the jury for its deliberations after the jury instruction conference and without informing counsel of the changes.  In the alternative, Harvey argues that she must be resentenced because the circuit court erroneously exercised its discretion in imposing an unduly harsh sentence on count 1.

¶4      We conclude that the jury instruction for count 1 did not violate Harvey's right to due process.  First, the instruction was legally accurate.  Second, although the circuit court erroneously instructed the jury on two methods of proof that were not supported by sufficient evidence, that error did not violate Harvey's right to due process because the jury was also instructed on the method of proof of direct delivery of heroin by Harvey to D.B., and that method was supported by sufficient evidence.  As for Harvey's argument that the circuit court's alleged alteration of the written jury instructions after the jury instruction conference requires reversal, we conclude that this argument fails from a factual standpoint and

---

This paragraph applies … [t]o any distribution or delivery described in this paragraph, regardless of whether the distribution or delivery is made directly to the human being who dies.  If possession of the controlled substance … is transferred more than once prior to the death as described in this paragraph, each person who distributes or delivers the controlled substance … in violation of [WIS. STAT. §] 961.41 is guilty under this paragraph.

Sec. 940.02(2)(a)3.

from a lack of authority. Finally, the circuit court did not erroneously exercise its discretion in imposing Harvey's sentence on count 1. Accordingly, we affirm Harvey's judgment of conviction and sentence.

## BACKGROUND

¶5 The following material facts are gleaned largely from pretrial pleadings of the parties and the trial transcript.

¶6 Officers with the Black River Falls Police Department were dispatched to the apartment of Joyce McLevain based on a report of an unresponsive person. Upon arrival, the officers found that the person, later identified as D.B., was deceased. An officer searched D.B.'s clothing and found a foil packet in his pocket that was later confirmed to contain heroin.[4] A medical examiner concluded that heroin ingested by D.B. was a substantial factor in D.B.'s death.[5]

¶7 Police officers interviewed Michael Bearfield, McLevain's son, who was present at McLevain's apartment on the night of D.B.'s death. In the interview, Bearfield stated that he was at Murphy's Pub the night of D.B.'s death and witnessed Harvey sell a packet of heroin to D.B. Bearfield stated that he later saw D.B. snort the heroin in the bathroom of Murphy's Pub. According to Bearfield, D.B. purchased another packet of heroin from Harvey later that night at the McLevain apartment.

---

[4] This packet of heroin relates to the conviction on count 2 that Harvey delivered heroin to D.B.

[5] Harvey did not dispute at trial, and does not dispute on appeal, that heroin ingested by D.B. was a substantial factor in his death.

¶8 Harvey was arrested and charged with one count of first degree reckless homicide by delivery of a controlled substance contrary to WIS. STAT. § 940.02(2)(a) (count 1).[6] In an interview with police officers, Harvey denied delivering heroin to D.B. at Murphy's Pub, but she acknowledged being involved in a sale of heroin to D.B. later that evening at McLevain's apartment. Harvey provided a written statement describing the following version of events concerning the night of D.B.'s death. Harvey visited Murphy's Pub that evening with a person named Michael Gates. At Murphy's Pub, D.B. approached Harvey and asked if she could provide to him "any type of drugs." Harvey left Murphy's Pub, drove with Gates to Gates' residence to obtain heroin, then drove with Gates to McLevain's apartment. According to Harvey, Gates, and not her, sold heroin to D.B. at the McLevain apartment. The interviewing officer asked Harvey if she was the "middle man" in that transaction (which was the factual basis for count 2) and she stated, "pretty much."

¶9 Harvey pleaded not guilty to the charge and filed a pre-trial motion requesting permission to introduce evidence at trial that Gates delivered heroin to D.B. on the night of D.B.'s death. The circuit court granted Harvey's motion.

---

[6] WISCONSIN STAT. § 940.02(2)(a) states, in pertinent part:

> (2) Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:

> (a) By manufacture, distribution or delivery, in violation of [WIS. STAT. §] 961.41, of a controlled substance … if another human being uses the controlled substance … and dies as a result of that use.

Sec. 940.02(2)(a).

¶10    Later, the State moved to amend the information to add a second charge, delivery of heroin contrary to WIS. STAT. § 961.41(1)(d)1. (count 2).[7]  The State's motion alleged that Harvey delivered heroin to D.B. twice on the night of his death:  the first delivery occurred at Murphy's Pub and involved the heroin that caused D.B.'s death; the second delivery occurred at McLevain's apartment and concerned the heroin found in D.B.'s pocket by police.  The circuit court granted the motion.

¶11    At trial, Bearfield testified that he had been at Murphy's Pub with D.B. the night of D.B.'s death.  The State then played the recording of Bearfield's police interview.  However, Bearfield, who is Harvey's cousin, told the jury that he did not remember participating in that interview.  Bearfield stated that he was "under the influence" of drugs during the interview and that his statements in that interview could not be trusted.  Nonetheless, Bearfield admitted before the jury that he had not "made up" anything he said in the interview with police.

---

[7] WISCONSIN STAT. § 961.41(1)(d)1. states, in pertinent part:

> (1) MANUFACTURE, DISTRIBUTION OR DELIVERY. Except as authorized by this chapter, it is unlawful for any person to manufacture, distribute or deliver a controlled substance ….  Any person who violates this subsection is subject to the following penalties:
>
> ….
>
> (d) *Heroin*.  If the person violates this subsection with respect to heroin or a controlled substance analog of heroin and the amount manufactured, distributed or delivered is:
>
> 1. Three grams or less, the person is guilty of a Class F felony.

Sec. 961.41(1)(d)1.

6

¶12    Kari Gomes, who was Bearfield's girlfriend at the time of D.B.'s death, testified that Bearfield called her shortly after D.B.'s death. In that call, Bearfield told her that D.B. had overdosed, and that Harvey sold D.B. the heroin on which D.B. overdosed.

¶13    Timothy Coupe testified at trial to the following. Coupe was at Murphy's Pub the night of D.B.'s death. He saw Harvey arrive at Murphy's Pub that night and leave after about five to eight minutes. Coupe did not recall seeing any interaction between D.B. and Harvey at Murphy's Pub. Later that evening, Coupe left Murphy's Pub and drove D.B., Bearfield, and McLevain to McLevain's apartment. D.B. appeared intoxicated during the drive because D.B.'s eyes were "rolling around" and his head was "leaning forward." Once they reached the apartment, D.B. was "nodding … in and out of conversation" and "slouching over standing up." Harvey arrived at the apartment about one hour later, gave D.B. a small plastic bag in exchange for money, then left after a few minutes. Coupe left soon after this exchange, leaving D.B. at McLevain's apartment with Bearfield and McLevain.

¶14    The State introduced at trial the written statement provided by Harvey during her post-arrest interview with police. As already noted, in the statement and the interview Harvey: denied delivering heroin to D.B. at Murphy's Pub; stated that she was with Gates when Gates delivered heroin to D.B. at McLevain's apartment; and stated that she was "pretty much" the "middleman" for that heroin sale between Gates and D.B.

¶15    Following the close of evidence, the circuit court conducted a jury instruction conference with the parties and discussed the parties' proposed instructions. The parties did not dispute the portions of the proposed instructions

for counts 1 and 2 regarding the method of proof that Harvey directly delivered heroin to D.B. Harvey objected to the instructions proposed by the State after the close of evidence regarding two alternate methods of proof: (1) PTAC based on Harvey aiding and abetting Gates in delivering heroin to D.B.; and (2) chain of delivery. The circuit court denied Harvey's objections, explaining that those methods of proof were properly before the jury as those were supported by sufficient evidence. That portion of the trial transcript leaves ambiguous the following: whether the State proposed those jury instructions about alternative methods for count 1, count 2, or both; whether Harvey was referencing count 1, count 2, or both when she objected to the proposed instructions about the two alternate methods of proof; and whether the circuit court, in ruling on those proposed instructions, allowed the instructions for count 1, count 2, or both.

¶16     After the jury instruction conference, and before closing arguments, the circuit court provided the parties with the final version of written jury instructions that would be read to the jury. The circuit court stated that counsel had worked with the court in reviewing the draft instructions:

> We've also been working hard on the instructions and the lawyers have been very good about ferreting out certain misnomers and they now know that certain corrections are going to be made particularly to the dates that are alleged by the State to Counts 1 and 2, and also we had some misnomers about first degree reckless homicide and those misnomers occurred on Pages 5, 6 and 7, and I caught those. The lawyers have had enough time now to digest the proposed instructions and are there any other corrections that need to be made?

Neither party made any further objections or requested other corrections to the jury instructions as written.

¶17    The circuit court read the instructions to the jury and the parties gave their closing arguments.  The court sent the jury out to deliberate and provided the jury with a set of written instructions.  Other events after the jury was sent out and the pertinent portions of the written jury instructions and as read to the jury are discussed later in this opinion.

¶18    In two general verdicts, the jury found Harvey guilty of both counts.  On count 1, the circuit court sentenced Harvey to twelve years of initial confinement followed by eight years of extended supervision.  On count 2, the court sentenced Harvey to three years of initial confinement followed by three years of extended supervision, concurrent with the sentence for count 1.

¶19    Harvey appeals the judgment of conviction and her sentence.  Other material facts are mentioned in the following discussion.

## DISCUSSION

¶20    Harvey argues that the circuit court erred, and she must be granted a new trial, for the following reasons:  (1) the circuit court violated her right to due process in instructing the jury; (2) the circuit court modified the jury instructions after the jury instruction conference without informing the parties; and (3) the court imposed a sentence that is unduly harsh.  We address each argument in turn.

### I.  The Circuit Court Did Not Deprive Harvey of Due Process in Instructing the Jury.

¶21    As noted, Harvey argues that we must reverse her judgment of conviction and order a new trial because errors in the jury instruction for count 1 deprived her of her right to due process.  We first set forth governing principles regarding our standard of review and jury instruction challenges.

9

## A. Standard of Review and Jury Instruction Challenges.

¶22    This appeal requires that we determine whether the jury instruction for count 1 violated Harvey's right to due process. "[W]hether a jury instruction from the circuit court deprives a defendant of his [or her] right to due process is a question of law, which we review de novo." ***State v. Trammell***, 2019 WI 59, ¶16, 387 Wis. 2d 156, 928 N.W.2d 564.

¶23    Material to our analysis, Wisconsin courts recognize two types of challenges to jury instructions which concern a party's right to due process: "(1) 'those challenging the legal accuracy of the instructions'; and (2) 'those alleging that a legally accurate instruction unconstitutionally misled the jury.'" ***Id.***, ¶42 (quoted source omitted); ***State v. Harvey***, 2002 WI 93, ¶23, 254 Wis. 2d 442, 647 N.W.2d 189.   In the first type of challenge, "[i]f the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." ***State v. Hemphill***, 2006 WI App 185, ¶8, 296 Wis. 2d 198, 722 N.W.2d 393.  In the second type of challenge, a jury is unconstitutionally misled if "there is a reasonable likelihood that the jury applied the challenged instruction[] in a manner that violates the constitution." ***State v. Burris***, 2011 WI 32, ¶45, 333 Wis. 2d 87, 797 N.W.2d 430.  The defendant has the burden to establish a reasonable likelihood that the jury unconstitutionally applied an instruction. ***Id.***, ¶46.

## B. Pertinent Portions of the Jury Instructions.

¶24    We now reproduce pertinent portions of the instructions that were provided to the jury.[8]  For the most part, the circuit court's reading of the jury instructions tracked the written instructions.  The differences between the written and read jury instructions that Harvey asserts are material are noted below.

¶25    Based on the standard instruction for this offense, WIS JI—CRIMINAL 1021, the written instruction for count 1 begins by setting forth the elements of first degree reckless homicide by delivery of heroin.  The instruction on elements pertains to both the direct delivery and chain of delivery methods of proof:

> 1.  The defendant or Michael Gates delivered a substance.…
>
> 2.  The substance was heroin.
>
> 3.  The defendant or Michael Gates knew or believed that the substance was heroin a controlled substance.…
>
> 4.  [D.B.] used the substance alleged to have been delivered by the Defendant or Michael Gates and died as a result of that use.

The written instruction for count 1 continues with the portion of the instruction concerning the chain of delivery method of proof:

> It is not required that the Defendant or Michael Gates delivered the substance directly to [D.B].  If possession of the substance was transferred more than once before it was used by [D.B.], each person who transferred possession of the substance has delivered it.

---

[8] Harvey asserts on appeal that a set of jury instructions in the record are the instructions sent to the jury to use in its deliberations as required by WIS. STAT. § 805.13(4).  The State does not dispute Harvey's assertion, and we follow the lead of the parties in assuming that those written instructions were given to the jury.  The instructions include those set forth in paragraphs 24-26 in the text.

When the circuit court read to the jury the just-quoted portions of the instruction for count 1 concerning the elements of first degree reckless homicide and chain of delivery, it omitted the phrase "or Michael Gates" from each.

¶26    The written instruction for count 1 also provided the standard instruction for PTAC, WIS JI-CRIMINAL 400, which states, in relevant part:

> A person intentionally aids and abets the commission of a crime when, acting with knowledge or belief that another person is committing or intends to commit a crime, (he)(she) knowingly either:
>
> - assists the person who commits the crime; or
>
> - is ready and willing to assist and the person who commits the crime knows of the willingness to assist.
>
> ….
>
> Before you may find the defendant guilty, the State must prove by evidence which satisfies you beyond a reasonable doubt that the defendant directly committed the crime of first degree reckless homicide or intentionally aided and abetted the commission of that crime.
>
> ….
>
> All twelve jurors do not have to agree whether the defendant directly committed the crime or aided and abetted the commission of the crime. However, each juror must be convinced beyond a reasonable doubt that the defendant was concerned in the commission of the crime in one of those ways.

The standard written instruction for PTAC then directs the circuit court to reiterate the elements of first degree reckless homicide. That portion of the instruction states that the court should use the phrase "the defendant or (name of other person)" in place of "the defendant" when reading the elements of the crime to the jury as part of the PTAC instruction. *See* WIS JI—CRIMINAL 400; WIS. STAT. § 939.05(1). The written instruction for count 1 given to the jury concerning PTAC did not restate the

12

elements; rather, that portion of the written instruction gave only the directions in the standard instruction just summarized. When the circuit court read to the jury the elements of first degree reckless homicide as part of the PTAC standard instruction, it read the elements as those are set forth in ¶25 above from the written instruction, including the phrase "or Michael Gates."

¶27 The written jury instructions set forth the elements of count 2, delivery of a controlled substance. Neither the written instructions nor the instructions as read for count 2 mention Gates or the alternate methods of proof that were set forth in the instruction for count 1—*i.e.*, PTAC and chain of delivery.

## C. The Jury Instruction for Count 1 Was Legally Accurate.

¶28 Harvey argues that the instruction for count 1 was legally inaccurate and, as such, violated her right to due process.[9] To repeat, the disputed written instruction stated in pertinent part:

> 1. The defendant or Michael Gates delivered a substance.…
>
> 2. The substance was heroin.
>
> 3. The defendant or Michael Gates knew or believed that the substance was heroin a controlled substance.…
>
> 4. [D.B.] used the substance alleged to have been delivered by the defendant or Michael Gates and died as a result of that use.

As described earlier, the section of the instruction just quoted was in the written instruction for count 1, but the phrase "or Michael Gates" was not read to the jury as part of the elements. When the elements for count 1 were again read to the jury

---

[9] This argument from Harvey is separate from her argument that there was insufficient evidence to support portions of the jury instruction for count 1 which concern the PTAC and chain of delivery methods of proof. We discuss that argument from Harvey in the next section of this opinion.

as part of the PTAC portion of the instruction for count 1, the phrase "or Michael Gates" was read to the jury.

¶29 According to Harvey, the phrase "or Michael Gates" as used in both the written instruction and when the PTAC portion of the instruction was read to the jury, was legally inaccurate because it permitted the jury to convict Harvey under the PTAC or chain of delivery methods of proof if the jury found that Gates delivered the heroin without any involvement by Harvey.[10] For the following reasons, and based on our review of the challenged instruction "in light of the instructions as a whole," we reject Harvey's interpretation of the instruction for count 1. *Fischer by Fischer v. Ganju*, 168 Wis. 2d 834, 853, 485 N.W.2d 10 (1992).

¶30 First, the circuit court instructed the jury that it could find Harvey guilty of count 1 as a PTAC only if she was involved in the commission of the crime. To repeat, the instruction stated in pertinent part:

> The State contends that the defendant was concerned in the commission of the crime of first degree reckless

---

[10] Harvey does not argue that the inclusion of the phrase "or Michael Gates" in the elements for count 1 permitted the jury to convict her under the direct delivery method of proof without any involvement by Harvey. Any such argument would fail because the written and read jury instruction for count 1 included this paragraph:

> If you are satisfied beyond a reasonable doubt that the defendant delivered heroin, that the defendant knew that the substance was heroin a controlled substance, that [D.B.] used heroin delivered by the defendant, and that [D.B.] died as a result of that use, you should find the defendant guilty of first degree reckless homicide.

Based on that language, the jury was instructed that it may find Harvey guilty of count 1 based on the direct delivery method of proof only if Harvey delivered the heroin to D.B. The written elements for count 1 and the just-quoted language do not reasonably suggest that the jury was permitted to find Harvey guilty of count 1 if Gates delivered the heroin to D.B. without Harvey's involvement.

> homicide by either directly committing it or by intentionally aiding and abetting the person who directly committed it. If a person intentionally aids and abets the commission of a crime, then that person is guilty of the crime as well as the person who directly committed it.
>
> ….
>
> All twelve jurors do not have to agree whether the defendant directly committed the crime or aided and abetted the commission of the crime. However, each juror must be convinced beyond a reasonable doubt that the defendant was concerned in the commission of the crime in one of those ways.

Based on that language, the jury was instructed that it may find Harvey guilty as a PTAC only if she: (1) directly delivered the heroin; or (2) aided and abetted Gates in delivering the heroin. That language in the instruction does not reasonably suggest that the jury was permitted to find Harvey guilty of count 1 if Gates delivered the heroin without Harvey's involvement.

¶31     Second, the circuit court instructed the jury that it could find Harvey guilty under the chain of delivery theory for count 1 only if she participated in the crime. To repeat, this part of the instruction states:

> It is not required that the defendant or Michael Gates delivered the substance directly to [D.B]. If possession of the substance was transferred more than once before it was used by [D.B.], each person who transferred possession of that substance has delivered it.

According to the instruction, even if the jury found that Gates delivered the heroin directly to D.B. at Murphy's Pub, the jury could convict Harvey under the chain of delivery method of proof only if she transferred possession of the heroin. The language of the instruction does not indicate that the circuit court permitted the jury to convict Harvey of count 1 if Gates acted alone.

15

¶32 In sum, the instruction for count 1, read as a whole, accurately stated the applicable law because the instruction would not lead a reasonable jury to conclude that the inclusion of the phrase "or Michael Gates" in the instruction for count 1, either in written form or as read to the jury, permitted the jury to convict Harvey if Gates alone delivered the heroin to D.B. without Harvey's involvement.

## D. The Count 1 Instruction Did Not Unconstitutionally Mislead the Jury.

¶33 Harvey argues that the circuit court violated her right to due process by instructing the jury on PTAC and chain of delivery for count 1 because those methods of proof were not supported by evidence sufficient to convict her. More specifically, according to Harvey, the instruction unconstitutionally misled the jury because the inclusion of those two methods of proof in the instruction makes it impossible to determine whether the jury's general verdict was based on either of those two methods of proof. The State does not dispute that there was insufficient evidence to convict Harvey of count 1 based on the PTAC and chain of delivery methods of proof. However, the State argues that the instruction did not violate Harvey's right to due process because there was sufficient evidence to convict Harvey on count 1 through Harvey's direct delivery of heroin to D.B.

### 1. There Was Insufficient Evidence to Support Portions of the Jury Instruction.

¶34 We begin by considering whether the evidence presented to the jury was sufficient to sustain Harvey's conviction for first degree reckless homicide based on PTAC and chain of delivery methods of proof. As noted, the State concedes that there was no evidence presented that a person other than Harvey delivered the heroin to D.B. that caused D.B.'s death. We agree. Our review of the record confirms that the State presented evidence that Harvey alone delivered heroin directly to D.B. at Murphy's Pub. Neither party presented evidence that another

person was involved in that delivery as would be necessary to convict Harvey based on PTAC or chain of delivery methods of proof for count 1.[11]  Therefore, there was insufficient evidence for a reasonable trier of fact to convict Harvey based on PTAC or chain of delivery methods of proof for count 1.

## 2.  The Circuit Court Erred in Giving Portions of the Jury Instruction, but the Error Did Not Violate Harvey's Right to Due Process.

¶35     Harvey argues that it was error for the court to instruct the jury on the two methods of proof that were not supported by sufficient evidence, and that error violated Harvey's right to due process and requires a new trial on count 1.  We agree with Harvey that the circuit court erroneously instructed the jury on PTAC and chain of delivery methods of proof for count 1 because those methods were not supported by sufficient evidence.  Nevertheless, we conclude that the circuit court error did not violate Harvey's right to due process.

¶36     Harvey primarily relies on our supreme court's opinion in *State v. Wulff*, 207 Wis. 2d 143, 557 N.W.2d 813 (1997), to support her contention that her constitutional right was violated.  Wulff was charged with a crime that could be committed by one of three methods of proof.  *Wulff*, 207 Wis. 2d at 148.  At trial, the State presented evidence that Wulff committed the crime by one of those methods, but the jury was instructed that it could convict Wulff only if it found that he committed the crime by another, separate method of proof, and the jury convicted him.  *Id.* at 148-49.  In other words, the State did not produce sufficient evidence to support a conviction on the sole method of proof on which the jury was instructed.  *Id.* at 149.  Our supreme court held that Wulff's conviction must be reversed because

---

[11]  Additionally, we note that the circuit court granted Harvey's pre-trial motion to introduce evidence of Gates' purported sale of heroin to D.B., but Harvey conceded during a sidebar discussion with the circuit court at trial that she decided not to introduce such evidence.

a court "cannot affirm a criminal conviction on the basis of a theory not presented to the jury." *Id.* at 152.

¶37    Harvey contends that *Wulff* requires reversal of her conviction because the instruction for count 1 included two methods of proof—PTAC and chain of delivery—that were not "presented to the jury." We do not agree that the analysis in *Wulff* is applicable in these circumstances. Unlike in *Wulff*, the circuit court here instructed the jury not only on two methods of proof that were not "presented to the jury" during trial, but also on one method—direct delivery—that was presented by the State during trial. As a result, *Wulff*'s statement that a court "cannot affirm a criminal conviction on the basis of a theory not presented to the jury" does not help to resolve whether the instruction for count 1 unconstitutionally misled the jury.

¶38    Harvey also briefly relies on our supreme court's opinion in *State v. Williams*, 2015 WI 75, 364 Wis. 2d 126, 867 N.W.2d 736. Williams was charged with felony murder. *Williams*, 364 Wis. 2d 126, ¶16. Material to this appeal, the court held that the jury instructions were erroneous because the jury's conviction of Williams was based on four elements as required by the jury instruction. *Id.*, ¶71. The court determined that the error was harmless in light of the fact that, if the jury was properly instructed, the charged crime required proof of only three of those four elements proven at trial. *Id.*, ¶¶71-72. Put another way, the error was harmless because the State proved at trial one more element than was required to convict Williams.

¶39    Harvey argues that the supreme court's discussion in *Williams* requires that we reverse her conviction. However, the material facts of *Williams* are different than the facts of this case in a way that makes a difference to our

analysis. In *Williams*, the conviction based on all four proven elements necessarily established that the jury found guilt beyond a reasonable doubt on the three required elements for the crime. Here, Harvey's conviction on count 1 was not based in part on an extra element not needed for conviction. Thus, *Williams*' discussion does not inform our analysis.

¶40 For its part, the State does not provide us with any authority directly on point. Rather, the State argues generally that any error in instructing the jury on alternative methods of proof does not make a difference to the result in this appeal because the conviction on count 1 must have been based on direct delivery of heroin to D.B. by Harvey, and that method of proof was supported by sufficient evidence. Thus, we are left with no authority from the parties that directly relates to the particular circumstances of this matter. Nonetheless, our research reveals that the issue now before us has been addressed directly in conflicting opinions from our supreme court and the U.S. Supreme Court.

¶41 In *State v. Crowley*, 143 Wis. 2d 324, 422 N.W.2d 847 (1988), Crowley was charged with a crime that included an element that could be proven by one of two methods: through direct evidence or by a statutory presumption. *Crowley*, 143 Wis. 2d at 327. At trial, the State attempted to prove that element through both methods and the jury was instructed on both. *Id.* at 327, 338. Crowley argued that there was insufficient evidence to support the statutory presumption method of proof. *Id.* at 329 n.4. Because the jury found that Crowley was guilty through a general verdict, it was not obvious from the verdict which method of proof the jury employed and, as a result, Crowley argued that he should be granted a new trial. *Id.* at 331. Material to this appeal, our supreme court held that a conviction which rests on alternative methods of proof can be sustained only if there was sufficient evidence supporting each method:

> when alternative methods of proof resting upon different evidentiary facts are presented to the jury, it is necessary, in order to sustain a conviction, for an appellate court to conclude that the evidence was sufficient to convict beyond a reasonable doubt upon both of the alternative modes of proof.

*Id.* at 329. Otherwise, the court reasoned, the conviction "violates constitutional due process" because "there is a logical possibility … that the jury finding of guilt may have been predicated on a mode of proof [(statutory presumption)] which did not produce evidence of guilt beyond a reasonable doubt, even though one of the modes of proof [(direct evidence)] was supported by sufficient evidence." *Id.* at 331-32, 334. According to the court, "[t]he problem is that an appellate court cannot be sure that [direct evidence] was that mode of proof which was used by the jury." *Id.* at 332. Nevertheless, the court affirmed Crowley's conviction because there was sufficient evidence to convict Crowley under both methods of proof. *Id.* at 335.

¶42 *Crowley* does not end our analysis because the holding and reasoning in *Crowley* cannot be reconciled with the U.S. Supreme Court's opinion in *Griffin v. United States*, 502 U.S. 46 (1991). Griffin was charged in federal court with participation in two objects of a conspiracy, but there was no evidence connecting her with one of those objects. *Griffin*, 502 U.S. at 47-48. The district court instructed the jury that it could find Griffin guilty if it found that she participated in either of the two objects of the conspiracy, and the jury found her guilty through a general verdict. *Id.* at 48. On appeal, Griffin argued that the instructions violated her right to due process. *Id.* The Court rejected Griffin's argument and held that the jury instructions in that case did not offend due process because there was sufficient evidence to support one of the alternative methods of proof on which the jury was instructed. *Id.* at 60. In its discussion, the Court drew a distinction between

20

jury instructions that instruct a jury on a "legally inadequate theory" as opposed to an instruction based on a "factually inadequate theory":

> When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

*Id.* at 59 (emphasis omitted). The Court further reasoned, "[W]e are aware of [no case] in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional …, nor even illegal …, but merely unsupported by sufficient evidence." *Id.* at 56. The Court also quoted with approval a Seventh Circuit decision:

> It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.

*Id.* at 59-60 (quoting *United States v. Townsend*, 924 F.2d 1385, 1414 (7th Cir. 1991)). Accordingly, the Court held that, while a jury instruction is erroneous if it includes methods of proof that are not supported by sufficient evidence, such an error does not violate due process when the jury is also instructed on a theory that is supported by sufficient evidence. *Id.* at 60.[12]

¶43 Our supreme court's holding in *Crowley* cannot be reconciled with the U.S. Supreme Court's holding in *Griffin*. Under *Crowley*, a conviction resting on

---

[12] The Court confirmed in *Griffin*, through its discussion of *Turner v. United States*, 396 U.S. 398 (1970), that the holding of *Griffin*, and its reasoning, are not restricted to conspiracy charges. *Griffin v. United States*, 502 U.S. 46, 56-57 (1991).

21

two potential factual methods of proof will not be upheld under federal due process principles if one of those theories is supported by sufficient evidence and the other is not; under *Griffin*, that conviction will be upheld under federal due process principles. For the following reasons, we conclude that *Crowley* has been abrogated by *Griffin*.

¶44 First, *Crowley* and *Griffin* are both based on federal due process requirements. *Crowley*, 143 Wis. 2d at 331, 334-35; *Griffin*, 502 U.S. at 48-49. Accordingly, the holding in *Crowley* is not based on our supreme court's interpretation of the Wisconsin Constitution. We note that, as Wisconsin's intermediate appellate court, we are ordinarily bound by Wisconsin Supreme Court precedent. *State v. Whitaker*, 167 Wis. 2d 247, 261, 481 N.W.2d 649 (Ct. App. 1992). However, "we may deviate from Wisconsin Supreme Court precedent when that precedent is based on an interpretation of federal law that is no longer in accord with subsequent decisions by the United States Supreme Court." *Id.*; *see also State v. Jennings*, 2002 WI 44, ¶19, 252 Wis. 2d 228, 647 N.W.2d 142 ("The court of appeals must not follow a decision of this court on a matter of federal law if it conflicts with a subsequent controlling decision of the United States Supreme Court."). The federal constitutional basis for *Crowley*'s holding was explicitly rejected in *Griffin*, and that leads to the conclusion that *Crowley* was abrogated by *Griffin*.

¶45 Second, in *Crowley*, our supreme court based its reasoning on three U.S. Supreme Court opinions: *Yates v. United States*, 354 U.S. 298 (1957); *Zant v. Stephens*, 462 U.S. 862 (1983); and *Stromberg v. California*, 283 U.S. 359 (1931). In particular, *Crowley* relied on the following rule set forth in *Yates*: "[T]he rule … 'requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury

22

selected.'"  *Crowley*, 143 Wis. 2d at 334-35 (quoted source omitted).  In *Griffin*, the U.S. Supreme Court clarified that the rule in *Yates* does not apply to circumstances in which one of the possible bases for conviction underlying a general verdict is not supported by sufficient evidence.  *Griffin*, 502 U.S. at 56.  Rather, the Court explained that the *Yates* rule refers only to circumstances in which the verdict is not "supportable" on one of the possible bases of conviction because of "legal error" or a "mistake about the law."  *Id.* at 59.  The Court came to the same conclusion regarding the holdings of *Zant* and *Stromberg*.  *See id.* at 51-55.  Accordingly, the U.S. Supreme Court in *Griffin* rejected the reasoning in *Crowley*.

¶46     Third, in *Wulff*, our supreme court recognized the tension between *Crowley* and *Griffin*.  In *Wulff*, the State argued that the decision in *Crowley* was called into doubt by *Griffin*, and the court discussed the holdings of both of those cases.  *Wulff*, 207 Wis. 2d at 149-51.  The court described *Griffin*'s holding as follows:  "The Court held that, in a federal prosecution, the Due Process Clause does not require that general guilty verdicts in a multiple-object conspiracy be set aside if the evidence is insufficient to support a conviction as to one object."  *Id.* at 151.  However, the court did not explicitly determine whether *Griffin* abrogated *Crowley* because the disputed jury instructions in *Wulff* did not present the same issues as the instructions in *Crowley* and *Griffin*.  *Id.*  Nevertheless, the court's summaries of

*Crowley* and *Griffin* in *Wulff* reasonably suggest that *Crowley* has been abrogated in light of *Griffin*.[13]

¶47 We now return to Harvey's contention that it was error for the circuit court to instruct the jury on two methods of proof for count 1, PTAC and chain of delivery, that were not supported by sufficient evidence. For the reasons already considered, we agree, and the State, in effect, does not dispute that specific part of Harvey's argument. As the Court put it in relatively gentle terms: "[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for [a trial] court to give an instruction removing that theory from the jury's consideration." *Griffin*, 502 U.S. at 60.

¶48 With that in mind, we next determine whether the holding in *Griffin* leads to the conclusion that the error in instructing the jury about count 1 did not violate Harvey's right to due process. For the holding in *Griffin* to apply here, there

---

[13] In this situation, we may, but are not required to, certify the case to our supreme court to resolve whether *State v. Crowley*, 143 Wis. 2d 324, 422 N.W.2d 847 (1988), has been abrogated by *Griffin*. *State v. Jennings*, 2002 WI 44, ¶16, 252 Wis. 2d 228, 647 N.W.2d 142. Here, that is not necessary because our supreme court's interpretation of federal due process principles in *Crowley* conflicts with the U.S. Supreme Court's interpretation of those same principles in *Griffin*. Accordingly, we decline to certify this issue.

In addition, our research also reveals that the parties did not cite in their briefing *State v. Chambers*, 173 Wis. 2d 237, 496 N.W.2d 191 (Ct. App. 1992). In that case, Chambers was charged with two counts of sexual assault. *Chambers*, 173 Wis. 2d at 247. For each count, the jury was instructed that it could find Chambers guilty as either the principal actor or as a PTAC, and the jury convicted Chambers. *Id.* This court cited *Crowley* for the proposition that Chambers' conviction could be upheld only if there was sufficient evidence for all "alternative modes of proof" presented in that case. *Id.* at 247-48 ("[T]he evidence must be sufficient to convict him under three different scenarios: (1) as an aider in both counts; (2) as a principal actor in both counts; and (3) as an aider in one count and a principal actor in the other count."). This court did not rely on legal authority other than *Crowley* for this proposition. We conclude that *Chambers* was abrogated by *Griffin* for the same reasons that *Crowley* was abrogated by *Griffin*. *See State v. Prado*, 2020 WI App 42, ¶37 n.11, 393 Wis. 2d 526, 947 N.W.2d 182, *aff'd*, 2021 WI 64, 397 Wis. 2d 719, 960 N.W.2d 869 (citing *Jennings*, 252 Wis. 2d 228, ¶18) (holding that we are not bound by precedent from this court on matters of federal law when there is a conflict between our precedent and precedent from the U.S. Supreme Court).

must have been sufficient evidence to support the method of proof of direct delivery of the heroin by Harvey to D.B. as charged in count 1. In determining whether evidence is sufficient to support a method of proof on which the jury was instructed, we "review the sufficiency of the evidence by comparing the evidence with the statutory requirements of the crime." *State v. Beamon*, 2013 WI 47, ¶28, 347 Wis. 2d 559, 830 N.W.2d 681. Our standard for reviewing the sufficiency of the evidence provides that we may not overturn a jury's verdict "unless the evidence, viewed most favorably to sustaining the conviction, 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *Id.*, ¶21 (quoting *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990)). This standard is "highly deferential to a jury's verdict" and "a defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt." *Id.*

¶49 There was sufficient evidence for the jury to convict Harvey of count 1 based on the direct delivery method of proof. Bearfield stated in his police interview that he witnessed Harvey deliver heroin to D.B. at Murphy's Pub and watched D.B. use that heroin in the bathroom of the bar. Confirming Bearfield's statement to the police, Kari Gomes, Bearfield's girlfriend at the time of D.B.'s death, testified that Bearfield told her that Harvey sold D.B. the heroin that caused D.B.'s death. Further, Coupe testified that he saw Harvey at Murphy's Pub on the night of D.B.'s death. Coupe also testified that D.B. began acting differently after leaving Murphy's Pub, including that he was "kind of nodding out, in and out of conversation" and his "eyes [were] rolling around, his head kind of leaning forward." That evidence was sufficient for a reasonable jury to convict Harvey of count 1.

¶50    To summarize, it is Harvey's burden to establish a constitutional violation based on an errant jury instruction:

> This constitutional challenge … must be based upon more than conjecture.  Such a challenge must demonstrate a reasonable likelihood that the jury understood that the instructions allowed a conviction based upon insufficient proof.  *See* [*Burris*, 333 Wis. 2d 87], ¶49 ("'Wisconsin courts should not reverse a conviction simply because the jury possibly could have been misled; rather a new trial should be ordered only if there is a reasonable likelihood that the jury was misled and therefore applied potentially confusing instructions in an unconstitutional manner.'") (quoting [*State v.*] *Lohmeier*, 205 Wis. 2d [183,] 193-94, 556 N.W.2d 90[(1996)]).

*Trammell*, 387 Wis. 2d 156, ¶42.  Here, the circuit court properly instructed the jury on the direct delivery method of proof and there was sufficient evidence of that method.  It was error for the circuit court to instruct the jury on PTAC and chain of delivery methods of proof regarding count 1.[14]  However, based on the reasoning in *Griffin*, the jury was able to determine that the only factually sufficient method of

---

[14]  The errors in the jury instruction in this case did not violate Harvey's due process rights or affect the result.  Nonetheless, we encourage circuit courts and attorneys to be precise in the proposing, amending, and reading of jury instructions, given the importance of instructions to a jury's deliberations.

proof for a conviction on count 1 was Harvey's direct delivery of heroin to D.B., and, accordingly, Harvey has failed to establish a due process violation.[15]

## II. The Court's Alteration of the Jury Instructions Does Not Require Reversal.

¶51    Harvey argues that her judgment of conviction must be reversed because the circuit court altered the jury instructions after the instruction conference without informing the parties of those changes. Harvey primarily relies on a

---

[15] Both parties discuss harmless error in light of the circuit court's instructing of the jury on two methods of proof for count 1 that were not supported by sufficient evidence. More particularly, the parties consider whether it is clear beyond a reasonable doubt that a rational jury would have found Harvey guilty of count 1 had the jury been properly instructed on only the method of proof of direct delivery. *Williams*, 364 Wis. 2d 126, ¶51. Based on our analysis above, including *Griffin*, we question whether harmless error must be discussed in these circumstances. Nonetheless, for the sake of completeness, we follow the lead of the parties and briefly discuss that issue. On the question of harmless error, Harvey focuses solely on what she perceives as weaknesses in the evidence presented by the State at trial. Harvey's argument misses the mark in that Harvey does not relate the error in the jury instruction to the question of harmless error. Put another way, Harvey does not tie her assertions about the trial evidence to the jury instruction errors. For that reason, Harvey's argument fails in that it is disassociated from the controlling issue. Also, the Court's reasoning in *Griffin* necessarily leads to the conclusion that the error in the instructions for count 1 was harmless. In *Griffin*, the Court distinguished between instructions that include legally inadequate methods of proof and those that include factually inadequate methods. *Griffin*, 502 U.S. at 59. Whereas jurors generally lack the ability to determine whether a method of proof is legally erroneous, jurors are able to avoid convicting on methods of proof supported by insufficient evidence because jurors "are well equipped to analyze the evidence." *Id.* Here, the parties agree that there was no evidence to support a conviction under the PTAC or chain of delivery methods of proof. Thus, based on *Griffin*'s reasoning, the jury's conviction must have been based on direct delivery—the only method of proof that was supported by the evidence.

Harvey also argues that the error was not harmless because the State told the jury during closing arguments that "party to the crime can apply to either charge." We conclude that this brief comment did not affect the result of the proceedings. Our review of the record indicates that this was the only instance of the State even obliquely arguing to the jury that Harvey could be guilty of count 1 as a PTAC. Also, *Griffin* demonstrates that jurors are well equipped to assess whether the evidence comports with the State's assertions.

directive from our supreme court in *State v. Kuntz*, 160 Wis. 2d 722, 467 N.W.2d 531 (1991):

> [W]e exercise our superintending authority under article VII, sec. 3(1) of the Wisconsin Constitution to declare that the circuit courts of this state must inform counsel of changes they make to jury instructions following the instructions conference. We believe that this rule is necessary to ensure that both parties are aware of the actual content of the jury instructions.

*Kuntz*, 160 Wis. 2d at 735. Harvey contends, in effect, that the directive set forth in *Kuntz* requires that we reverse her judgment of conviction even if she cannot specify any such changes made to the jury instructions by the circuit court and regardless of whether she can establish prejudice. We conclude that the circuit court's actions do not require reversal for the following two reasons, either one of which is sufficient to reject Harvey's contention.

¶52    First, Harvey's argument fails factually. As already noted, after the jury instruction conference, the circuit court prepared a further draft of the jury instructions, and neither party objected to those written instructions. The court then read instructions to the jury, and the parties gave their closing arguments. As the circuit court was releasing the jury to deliberate, the circuit court told the jury: "I will bring you the instructions momentarily.[16] I had them reprinted because there were some things there that I read them a little bit differently." After the jury left for deliberation, the court stated to the parties:

> As I read those instructions, there were a few things, I think they kind of got in a misorder a little bit and so I had them redone to make them a little bit more smoother and the Instruction 400 kind of cut into the Instruction 6020, and it just didn't flow very well so I tried to have those recast, *not*

---

[16] As discussed, pursuant to WIS. STAT. § 805.13(4), the circuit court is to provide a written set of instructions to the jury for its deliberations.

> *really any changes but to make it flow more smoothly.* I
> don't know if you have any comments about that.

(Emphasis added.) The State responded that it had no objection to the manner in which the court read the jury instructions and Harvey had "no objections" to the actions of the circuit court.[17] Harvey does not assert that the written instructions prepared by the circuit court and given to counsel immediately after the instruction conference are in the record. As a result, we cannot determine how the jury instructions sent to the jury room (which are in the record) differed, if at all, from the instructions given to counsel after the jury instruction conference, and Harvey does not attempt to make such a showing.

¶53 Further, the circuit court's statement on the record also causes Harvey's argument to fail from a factual standpoint. The circuit court's statements that it "read [the instructions] a little bit differently" and "tried to have those recast" do not indicate that the court altered the substantive content of the written instructions given to the jury. Rather, those statements strongly suggest that the court merely reorganized certain portions of the proposed instructions so that the instructions would be less confusing for the jury. Indeed, the court stated that there were "not really any changes but to make it flow more smoothly." Moreover, Harvey concedes in briefing in this court that it is "not clear exactly what the court meant by 'redone.'"

¶54 Second, we reject Harvey's expansive interpretation of the directive in ***Kuntz***. Relying on ***State v. S.P.B.***, 159 Wis. 2d 393, 396-97, 464 N.W.2d 102

---

[17] At that point in the proceedings, Harvey did not forfeit any argument on appeal regarding an alleged error in the jury instructions by failing to object. *See* WIS. STAT. § 805.13(4); ***Air Wis., Inc. v. North Cent. Airlines, Inc.***, 98 Wis. 2d 301, 315 & n.9, 296 N.W.2d 749 (1980).

(Ct. App. 1990), Harvey argues that a circuit court's failure to follow a supreme court directive requires reversal even if she has not demonstrated that she was prejudiced by the circuit court's action.[18]  In that opinion, this court analyzed the effect of our supreme court's directive in *D.S. v. Racine Cnty.*, 142 Wis. 2d 129, 416 N.W.2d 292 (1987), which stated:  "Under the exercise of this court's superintending and administrative authority pursuant to sec. 3, art. VII, WIS. CONST., we direct circuit judges henceforth to refuse to accept petitions drafted by persons not authorized to do so under [WIS. STAT. §] 51.20(4)."  *S.P.B.*, 159 Wis. 2d at 394.  This court interpreted that directive as "a prophylactic action designed to pronounce a bright line that cannot be crossed."  *Id.* at 396.  Accordingly, this court stated that the *D.S.* directive was not "subject to a prejudice component."  *Id.* at 397.

¶55     We do not agree with Harvey's argument that the directive set forth in *Kuntz*, like the directive in *D.S.*, requires reversal even if no prejudice is shown by Harvey.  The unstated premise of Harvey's argument is that, if any supreme court directive is not followed by a circuit court, there must be a reversal and a new trial regardless of a showing of prejudice.  As discussed below, that premise cannot be reconciled with binding case law and WIS. STAT. § 805.18.

¶56     Our supreme court has stated that the only trial errors that are immune from harmless error review are "structural errors" that "affec[t] the framework within which the trial proceeds, and are not simply ... error[s] in the trial process

---

[18] In briefing in this court, Harvey relies on an unpublished authored opinion issued by this court in 1992. Pursuant to WIS. STAT. RULE 809.23(3), an unpublished authored opinion issued prior to July 1, 2009, may not be cited as precedent or authority. Thus, we do not consider this unpublished opinion in our analysis, and we admonish counsel not to continue this practice.

itself." ***State v. Nelson***, 2014 WI 70, ¶30, 355 Wis. 2d 722, 849 N.W.2d 317. Structural errors are "so intrinsically harmful as to require automatic reversal." ***Id.*** All other errors are subject to the harmless error rule. ***Id.*** That rule is codified at WIS. STAT. § 805.18.[19]

¶57     Those authorities cause us to reject Harvey's argument that any alteration of the jury instructions by the circuit court after the jury instruction conference without informing the parties, no matter how slight, is an error that affects the "framework within which the trial proceeds" and is "so intrinsically harmful" that reversal is automatically required. Thus, we decline to extend the result of ***S.P.B.*** to our supreme court's directive in ***Kuntz***.

¶58     Harvey cannot establish that there was any error in the proceedings based on purported changes to the jury instructions by the circuit court. Indeed, Harvey cannot show how the jury instructions were allegedly altered. In addition, even if we assume that the circuit court erred in this respect (and we do not), there

---

[19] WISCONSIN STAT. § 805.18 states:

> (1)   The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.
>
> (2)   No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

Sec. 805.18.

has been no showing by Harvey that her substantial rights have been affected by the purported error.

### III. Harvey's Sentence Is Not Unduly Harsh.

¶59 Harvey argues that her sentence for count 1 is unduly harsh. We review an allegedly harsh and excessive sentence for an erroneous exercise of discretion. *State v. Prineas*, 2009 WI App 28, ¶29, 316 Wis. 2d 414, 766 N.W.2d 206. "[W]e will not disturb the exercise of the circuit court's sentencing discretion so long as 'it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach.'" *State v. Cummings*, 2014 WI 88, ¶75, 357 Wis. 2d 1, 850 N.W.2d 915 (quoted source omitted). A sentence is "unduly harsh" when it is "so excessive and unusual and so disproportionate to the offense committed so as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Grindemann,* 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507 (quoting *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975)). "A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." *Id.* (quoted source omitted).

¶60 "When making a sentencing determination, a court must consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant, as well as any appropriate mitigating or aggravating factors." *State v. Salas Gayton*, 2016 WI 58, ¶22, 370 Wis. 2d 264, 882 N.W.2d 459. Other factors regarding the defendant that a circuit court may consider within its discretion include:

> (1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.

*Id.* (quoting *State v. Harris*, 2010 WI 79, ¶28, 326 Wis. 2d 685, 786 N.W.2d 409). "The weight to be given each factor is a determination particularly within the wide discretion of the sentencing judge." *Prineas*, 316 Wis. 2d 414, ¶30.

¶61    In an abbreviated argument, Harvey contends that her sentence is unduly harsh because the circuit court did not give appropriate weight to the following four factors:  count 1 did not contain a malice or intent requirement; Harvey had a limited criminal history with no prior felony convictions; Harvey had no history of violence; and Harvey's risk of recidivism was low.

¶62    Harvey was sentenced to twelve years of initial confinement followed by eight years of extended supervision on count 1.  The transcript of the sentencing hearing shows that the circuit court was aware of the maximum sentence for a conviction of first degree reckless homicide.  The court also considered Harvey's age, education, employment, prior criminal history, level of remorse, and degree of culpability, as well as her threat to community safety and the gravity of the offense.

¶63    Harvey's sentence is not unduly harsh.  First, Harvey's sentence was well within the maximum sentence for her conviction on count 1.  The maximum sentence for first degree reckless homicide under WIS. STAT. § 940.02(2)(a) is 40 years of imprisonment pursuant to WIS. STAT. § 939.50(3)(c).  As noted, Harvey was sentenced to twenty years of imprisonment, with twelve years of initial

confinement and eight years of extended supervision. Second, the circuit court considered many factors—including, in effect, each of the four factors that Harvey identifies—in reaching its sentencing determination. Based on these and other factors, the court used a "process of reasoning" and "reached a result which a reasonable judge could reach." *Cummings*, 357 Wis. 2d 1, ¶75. That the circuit court did not balance, or view, the applicable factors as Harvey does is not a basis to conclude that the sentence is unduly harsh.

¶64 Therefore, we conclude that the circuit court did not erroneously exercise its discretion in imposing Harvey's sentence on count 1.

## CONCLUSION

¶65 For the foregoing reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.